**MANNESMANN DEMAG CORPORATION, Appellant, Cross-Appellee,**

v.

**ENGINEERED METAL PRODUCTS CO., INC., Appellee, Cross-Appellant.**

**Appeal Nos. 85–2381, 85–2409.**

United States Court of Appeals, Federal Circuit.

June 12, 1986.

Michael A. Cornman, New York City, for appellant. With him on brief was Fritz L. Schweitzer, Jr. of Mandeville & Schweitzer, New York City, of counsel.

Francois N. Palmatier, Chicago, Ill., for appellee. With him on brief was Marshall A. Burmeister of Burmeister, York, Palmatier, Hamby & Jones, Chicago, Ill., of counsel.

Before BALDWIN, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Mannesmann Demag Corporation (Mannesmann) appeals the final judgment of the United States District Court for the Dis-

trict of Delaware holding that claims 1, 2, 5–12, 14, 15, 18, and 19 of U.S. Patent No. 4,207,060 (the '060 patent), invented by Ludger Zangs and assigned to Mannesmann, were not infringed by Engineered Metal Products Co., Inc. (EMPCO). EMPCO cross-appeals from the district court's holding that the '060 patent is not invalid in terms of 35 U.S.C. § 103. We affirm the district court's judgment in both respects.

### Background

The background of this litigation and the issues at trial are well set out by the district court. *Mannesmann Demag Corp. v. Engineered Metal Products Co.,* 605 F.Supp. 1362, 226 USPQ 466 (D.Del.1985). The '060 patent is directed to a vessel for a metal smelting furnace having an interior wall above the smelting zone consisting of at least one cooling pipe coil through which water is pumped, sections of said coil being in contact, thereby protecting the vessel from the corrosive action of hot slag. The claimed invention makes unnecessary the usual refractory lining above the smelting zone of the furnace, and is particularly useful to withstand the thermal and mechanical stress characteristics of electric arc furnaces. Claim 1, the broadest claim, is as follows:

1. A vessel for a metal smelting furnace having a smelting zone including a heat-resistant interior wall, and cooling means for protecting the interior of said vessel, characterized by

(a) at least a portion of the interior wall of said vessel above the smelting zone consisting of at least one cooling pipe coil;

(b) said coil including fluid passage-forming sections;

(c) said cooling pipe coil being exposed to the center of the vessel, and

(d) neighboring sections of said coil being arranged in a contacting relation.

The cooling pipe coil structure is illustrated in Figure 1 of Zangs '060 patent, which shows the pipe coil sections in a contacting relation:

EMPCO manufactures and sells cooling pipe coils for use in electric arc furnaces. As found by the district court, the accused coils comprise a plurality of pipe sections, separated from neighboring pipe sections by a bar of about ⅝ inch diameter called a "slag-stopping bar", which is welded to one side of a pipe section and separated from the neighboring section by a tolerance of 1/16 to 1/32 inch. The EMPCO pipe coils, described as having pipe sections about 2½ inches in diameter, also have backbone bars welded to alternate pipe sections on the exterior side as a means of support. An EMPCO pipe coil was pictured in cross-section as follows, in exhibit PX–33:

EMPCO asserts that the spacing due to the bar between its pipes has the additional function of anchoring a protective layer of solidified slag, that the separation by ¹⁄₁₆ to ¹⁄₃₂ inch of the slag-stopping bar from the neighboring pipe section must be strictly construed in view of the prosecution history of the Zangs patent, and thus that the patent claims are not infringed by the EMPCO structure.

Mannesmann charged EMPCO with direct infringement, inducing infringement, and contributory infringement of the '060 patent, all either literally or by application of the doctrine of equivalents.

### Literal Infringement

■ Literal infringement requires that the accused device embody every element of the patent claim. *Stewart-Warner Corp. v. City of Pontiac*, 767 F.2d 1563, 1570, 226 UPSQ 676, 681 (Fed.Cir.1985); *Builders Concrete, Inc. v. Bremerton Concrete Products Co.*, 757 F.2d 255, 257, 225 USPQ 240, 241 (Fed.Cir.1985). The burden of proving infringement by a preponderance of the evidence was upon Mannesmann at trial. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361, 219 USPQ 473, 480 (Fed.Cir.1983).

■ Analysis of patent infringement involves two inquiries: determination of the scope of the claims, if there is a dispute as to claim interpretation or construction; followed by determination of whether properly interpreted claims encompass the accused structure. The threshold question of claim interpretation is, on appeal, reviewed for legal correctness. The application of the claim to the accused structure is a matter of fact, reviewed for clear error. *See Loctite Corp. v. Ultraseal Ltd.*, 781

F.2d 861, 866, 228 USPQ 90, 93 (Fed.Cir. 1985). In resolving a dispute as to the interpretation of a claim, reference may be had to the specification, the prosecution history, and the other claims in the patent. *Id.* at 867, 228 USPQ at 93.

At the trial EMPCO denied literal infringement on two grounds. First, EMPCO argued that the phrase "consisting of" in clause (a) of claim 1 is an exclusionary term that prevents infringement by EMPCO's coils because they contain additional structures not set forth in claim 1, namely the slag-stopping and backbone bars. The district court correctly observed that the phrase "consisting of" appears in clause (a), not the preamble of the claim, and thus limits only the element set forth in clause (a). The court correctly declined to read this usage of "consisting of" as excluding all other elements from the claim as a whole.

■ Referring to the patent's prosecution history, the district court observed that "consisting of" was added to clause (a) by Mannesmann during prosecution in order to distinguish the claims from cited references disclosing composite wall structures partly containing cooling pipes, and that the phrase was limiting only to the extent that it required "at least one cooling pipe coil" forming a wall structure. Accordingly the court correctly rejected EMPCO's argument that literal infringement was avoided merely by the addition of the slag-stopping and backbone bars to the cooling pipe coil. The court held that these bars did not detract from the coil's structural integrity as a wall. *Mannesmann*, 605 F.Supp. at 1380, 226 USPQ at 480. The presence of additional elements is irrel-

evant if all the claimed elements are present in the accused structure. *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703, 218 USPQ 965, 967 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984).

Turning to clause (d) of claim 1, Mannesmann contends that the court clearly erred in holding that the clause "neighboring sections of said coil being arranged in a contacting relation" requires that the sections actually touch. Mannesmann argues that EMPCO's neighboring coil sections are in substantial if not actual contact, because they are sufficiently close to prevent the flow of slag through the coil to the exterior wall. Mannesmann also argues that EMPCO's interposition of the ⅝ inch slag-stopping bar between the pipes is no more than a reshaping of the pipe sections, and can not avoid the plain reading and intent of the claims. Mannesmann asserts that the ¹⁄₁₆ to ¹⁄₃₆ inch gap places the sections "in a contacting relation" as stated in clause (d), and that this gap is within manufacturing tolerances. EMPCO argues that Zangs gave up the opportunity so to interpret the claims when he changed "closely adjacent" to "in a contacting relation".

The district court reviewed the prosecution history, and determined that Zangs had originally employed the term "closely adjacent" to describe the spacing between pipe sections. Upon the examiner's objection to "closely adjacent" on the two-fold ground of indefiniteness and not distinguishing from certain cited references, Zangs substituted the words "in a contacting relation". The district court also observed that the dictionary defines "contacting" as meaning physical touching.

The district court also declined to construe the phrase "sections of said coil" in clause (d) literally to include the combination of a slag-stopping bar welded to a pipe, the court stating that its construction of the term "sections of said coil" to mean only pipes was the more reasonable, in light of the specification.

The district court also observed that even the combination of the pipe and slag-stopping bar in the EMPCO system, did not touch the neighboring pipe but was separated by a ¹⁄₁₆ to ¹⁄₃₂ inch gap. Mannesmann disputes both the existence and the significance of this gap. The district court referred favorably to the testimony of Mr. Wunsche, the President of EMPCO, to the effect that EMPCO "intentionally welded the [slag-stopping] bar to only one adjacent pipe to ensure flexibility and thereby avoid cracking of the panel structure". *Mannesmann,* 605 F.Supp. at 1379, 226 USPQ at 479. The court said that Mr. Wunsche testified that "the slag stopping bars were purposefully spaced from one of the adjoining pipes by the use of a ¹⁄₃₂ of an inch feeler gauge and that it was acceptable for the resulting space to be as large as ¹⁄₁₆ of an inch." *Id.* Although Mannesmann maintains that one of ordinary skill in this art would not view such a tolerance as a "space", the district court found as fact that a small gap existed, and that the pipe sections were not "contacting".

The district court concluded that the words in clause (d), "in a contacting relation", require strict construction in view of the prosecution history and the prior art, and thus that the claims are not literally infringed by EMPCO's coils or vessels containing EMPCO's coils. *Mannesmann,* 605 F.Supp. at 1377–79, 226 USPQ at 478–80. We agree that in view of the prosecution history the district court correctly interpreted the literal meaning of "in a contacting relation" as requiring actual contact between neighboring sections of the coil, whether or not the term "section" is construed to include the slag-stopping bar. We discern no clear error in the district court's finding that the EMPCO structure avoids literal infringement of the claims.

### Estoppel

Mannesmann argues that even if literal infringement does not lie, the district court clearly erred in finding no infringement by equivalents. Mannesmann argues that the EMPCO structure "performs substantially

the same function in substantially the same way to obtain the same result", the standard for equivalency discussed in *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147, 3 USPQ 40, 44 (1929)).

The district court held that Mannesmann is estopped to assert infringement by equivalents, as applied to the Zang claims and the EMPCO structure, because of Zang's amendments and arguments during prosecution of the patent application. Specifically, the district court held that the insertion into clause (d) of the limitation that neighboring sections of cooling pipe coil be arranged "in a contacting relation", rather than "closely adjacent" as originally phrased, bars recourse to the doctrine of equivalents to cover the EMPCO coils.

Mannesmann cites *Deere & Co. v. International Harvester Co.*, 460 F.Supp. 523, 534, 200 USPQ 150, 159–60 (S.D.Ill.1978), in support of the proposition that "[i]nfringement is not avoided by separating a one-piece element into several parts if the element does accomplish the same result in substantially the same way." Mannesmann argues that EMPCO should not escape infringement merely because it designed an equivalent structure wherein each pipe is brought into substantial contact with its neighboring pipe by a small bar called a slag-stopping bar. The trial court made no explicit finding as to whether these structures were equivalent, holding instead that Mannesmann was estopped by the prosecution history from asserting such equivalence.

■ The doctrine of prosecution history estoppel is "an equitable tool for determining the permissible scope of patent claims" as against a specific structure accused of infringement. *Builders Concrete*, 757 F.2d at 258, 225 USPQ at 242. This doctrine bars a patentee from construing its claims in a way that would resurrect subject matter previously surrendered during prosecution of the patent application, and

thus prevents a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art. *Stewart-Warner Corp.*, 767 F.2d at 1572, 226 USPQ at 682; *Thomas & Betts Corp. v. Litton Systems, Inc.*, 720 F.2d 1572, 1579, 220 USPQ 1, 6 (Fed. Cir.1983).

■ Amendment of claims during patent prosecution does not necessarily bar all benefit of the doctrine of equivalents. In *Hughes Aircraft*, 717 F.2d at 1363, 219 USPQ at 481, this court rejected the view that any amendment of the claims necessarily confines a patentee to the literal language of the claims:

> Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. The effect may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to application of the doctrine itself.

*See also Loctite Corp.*, 781 F.2d at 871, 228 USPQ at 96: *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed. Cir.1984).

Mannesmann thus argues that it is entitled to some range of equivalents, while accepting that it is not entitled to the original scope of its unamended claims. Mannesmann argues that in amending its claims to meet the examiner's rejections under 35 U.S.C. §§ 103 and 112, it relinquished no more than was necessary to distinguish the references. Mannesmann argues that it is entitled to the benefit of its inventive concept, plainly distinguished from the prior art, and that the claims retain a scope of equivalency that is more than sufficient to encompass the EMPCO structure.

■ Determination of the scope of an estoppel deriving from actions taken before the Patent and Trademark Office requires review of not only the nature of

such actions, but the reasons therefor: the prior art thereby distinguished, and the examiner's objections thereby overcome. The reasons for amendment of claims during patent prosecution necessarily depend on the facts and circumstances of the particular case. *Loctite Corp.*, 781 F.2d at 871 n.7, 228 USPQ at 96 n. 7. In cases where a patentee's amendments were not required in response to an examiner's rejection or critical to the allowance of the claims, no estoppel has been found. *Great Northern Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 166, 228 USPQ 356, 359 (Fed. Cir.1986); *Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 325, 227 USPQ 838, 842 (Fed. Cir.1985). Similarly, estoppel is not necessarily created by an amendment designed only to remove a § 112 indefiniteness rejection. *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110, 1115, 219 USPQ 185, 187–88 (Fed.Cir.1983).

The Zangs application was rejected under 35 U.S.C. § 103 based on a patent to Hennenberger et al. (U.S. Patent No. 3,034,776, issued May 15, 1962) in view of certain patents to Moore and Wamser. These references were discussed in detail by the district court, principally in connection with validity, but are plainly pertinent to the court's interpretation of the claims. *See Mannesmann*, 605 F.Supp. at 1372, 1380–81, 226 USPQ at 474, 480–81. In changing "closely adjacent" to "in a contacting relation" and thereby obtaining allowance of the claims, Zangs wrote that the claim "has now been amended to clearly recite the significant, novel and non-obvious features of the invention disclosed in the subject application ... wherein neighboring sections of the coil are arranged in a contacting relation".

On the basis of this amendment the district court held that estoppel lies, even if the EMPCO structure were equivalent to that of the claims. The district court found that Mannesmann was attempting "to re-

claim the very thing it surrendered by way of amendment", and that Mannesmann was estopped to recover the "closely adjacent" scope it had relinquished. *Id.* at 1380, 226 USPQ at 480. The district court held that limiting amendments made in response to rejections under 35 U.S.C. § 103 must be "strictly construed", citing *Exhibit Supply Corp. v. Ace Patents Corp.*, 315 U.S. 126, 137, 62 S.Ct. 513, 519, 86 L.Ed. 736, 52 USPQ 275, 279–80 (1942).

The district court did not hold that Mannesmann is deprived of all equivalents to the invention as claimed in the '060 patent, and precedent does not so require. However, the enlarged claim interpretation that Mannesmann seeks to apply to the EMPCO structure falls squarely within the claim scope that Mannesmann relinquished to overcome the cited references. There is little distance between "closely adjacent" and "in a contacting relation", and on these facts we discern no error in the district court's application of prosecution history estoppel to hold that Zangs' claims are not infringed.

*Validity*

We have thoroughly reviewed the district court's holding that the Zangs patent is not invalid under 35 U.S.C. § 103. We have considered all of the cited references, and all the issues presented on appeal. We discern no error in the court's factual findings or legal conclusions, and affirm the court's holding that the '060 patent is not invalid, for the reasons stated in its opinion. *See Mannesmann*, 605 F.Supp. at 1370–76, 226 USPQ at 472–77.

AFFIRMED.