873 F.2d 1451
 11 U.S.P.Q.2d 1152
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MORTON THIOKOL, INC., Plaintiff-Appellant,
v.
ARGUS CHEMICAL CORPORATION, Defendant-Appellee.
 No. 88-1553.
 United States Court of Appeals, Federal Circuit.
 April 3, 1989.
Rehearing Denied May 3, 1989.
 
 Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and EDWARD S. SMITH, Circuit Judge.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The judgment of the United States District Court for the Eastern District of Louisiana is affirmed insofar as it determined that claims 1 and 4 of United States Patent No. 4,062,881 (the '881 patent) and claims 1 and 11 of United States Patent No. 4,120,845 (the '845 patent) were not infringed and dismissed the appellant's suit, and the judgment is vacated insofar as it determined that the patents are invalid, void, and unenforceable.
 
 OPINION
 
 2
 * This suit alleged that the appellee had infringed the claims of the appellant's patents listed above. Only claim 1 of each patent is involved in this appeal.
 
 
 3
 Those claims cover organotin compounds that have particular chemical structural elements. The two elements here involved are (1) a partial arrangement of atoms, referred to by the parties as a "molecular connectivity," wherein a tin atom is bonded to a sulfur atom, the sulfur atom then bonded to a second tin atom, and the second tin atom bonded to a reverse ester mercaptide: Sn-S-Sn-SR; and (2) "the organotin compound [has] an amount of tin within the range from 10 to 42% by weight and an amount of sulfur within the range from 8 to 42% by weight."
 
 
 4
 After trial, the district court made lengthy findings and conclusions and held that the claims of the '881 and '845 patents were invalid under 35 U.S.C. Sec. 112 (1982) because the specification was not enabling and the claims were indefinite. The court further held that the appellee's product did not infringe those claims, either literally or under the doctrine of equivalents.
 
 II
 
 5
 In this appeal, the appellant challenges the district court's determinations of invalidity and noninfringement. Its latter challenge is directed only to the finding of no literal infringement. We hold that the finding of no literal infringement is not clearly erroneous and on that basis we affirm the portion of the judgment of the district court that determined that the patents are not infringed and dismissed the suit. We therefore find it unnecessary to reach the district court's determination that the patents are invalid, and vacate the portion of the judgment that so determined.
 
 
 6
 A. The existence of infringement depends on whether the asserted claims, as properly construed, cover the accused product. Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 758, 221 USPQ 473, 477 (Fed.Cir.1984). The patentee has the burden to prove infringement by a preponderance of the evidence. SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed.Cir.1988); Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986). "Literal infringement requires that every limitation of the patent claim must be found in the accused device." Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.), cert. denied, 109 S.Ct. 75 (1988). Literal infringement vel non is a factual determination which is reviewed on a clearly erroneous standard. Uniroyal, Inc., 837 F.2d at 1054, 5 USPQ2d at 1441.
 
 
 7
 The appellant states in its brief that the district court adopted "word-for-word" the post-trial findings prepared by the appellee. At oral argument, however, the appellant conceded that the court did not adopt all the proposed findings verbatim. Since both the appellant and the appellee submitted proposed findings and the case remained sub judice for about a year, there is no reason to think that the court's findings represented anything other than the court's considered judgment.
 
 
 8
 The fact that the court adopted the findings submitted by one party "neither renders them improper nor relaxes our standard of review." Mathis v. Spears, 857 F.2d 749, 754, 8 USPQ2d 1551, 1555 (Fed.Cir.1988). Indeed, "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 572 (1985); Under Sea Indus., Inc. v. Dacor Corp., 833 F.2d 1551, 1556, 4 USPQ2d 1772, 1775 (Fed.Cir.1987).
 
 
 9
 B. To show infringement, the appellant was required to prove that every limitation in the claims, including the limitation specifying the percentage range of tin and sulfur by weight, was met in the appellee's products. The district court found that the appellant had failed to prove that the appellee's products contained claimed compounds that meet the percentage tin and sulfur limitation. That finding was not clearly erroneous.
 
 
 10
 The appellant introduced current, state-of-the-art nuclear magnetic resonance (nmr) data, which the district court held was legally irrelevant for determining infringement of the '881 and '845 patents. This evidence, however, was directed primarily to other limitations in the claims. The appellant's own expert, Professor Levy, admitted in a colloquy with the court that nmr experiments were "neutral" on the question whether the claimed range of tin was present. The appellee's expert, Dr. Eckert, whose testimony the court apparently credited, stated that "[n]either with NMR alone, nor with NMR in conjunction with all of the other testing that has been done," can one show that the compounds fall within the percent tin and sulfur limitation.
 
 
 11
 The appellant submitted elemental analyses of the appellee's products. This is a method for determining the percentage of elements present in a compound. The district court concluded:
 
 
 12
 [T]he lack of specificity of all the tin and sulfur analyses submitted at trial precludes Carstab [the appellant] from asserting that Argus' [the appellee's] accused products fall within the claimed ranges for tin and sulfur in either the '881 or the '845 patent.... The '881 and '845 claims require that the compounds claimed therein contain specified weight percentages of tin and sulfur. Since one skilled [in] the art cannot separate or even identify these claimed compounds, all elemental analyses of the accused products, which were produced at trial, did not sufficiently measure the tin and sulfur content for purposes of determining infringement. Therefore, Carstab has failed to prove infringement of the '881 and '845 patents by a preponderance of the evidence.
 
 
 13
 The record supports these conclusions. The expert witnesses uniformly agreed that the appellee's accused products were a complex mixture of many compounds, most components of which were admittedly noninfringing. The appellant's expert, Dr. Weisman, admitted on cross-examination that these elemental analyses could not identify a single component of the complex mixture as infringing the percent tin element of the claim. As Professor Herber testified--testimony the court accepted: "[E]lemental analysis of a mixture will give you a grand average over all of the components of that mixture and that information is not terribly useful with respect to understanding the chemical composition of any one component." The record therefore supports the court's finding that the appellant's elemental analyses of the whole complex mixture did not prove infringement.
 
 
 14
 The appellant argues that the court disregarded the testimony of its expert, Professor Seyferth. Seyferth, the appellant contends, demonstrated from his "calculations" that compounds in the appellee's products having the claimed molecular connectivities would all fall within the claimed ranges for tin and sulfur. These calculations were based upon Seyferth's assumptions as to the actual structure of the allegedly infringing compounds.
 
 
 15
 The district court did not find this testimony convincing, since it found that "[a]ny attempt to calculate percent tin and percent sulfur for a postulated molecule containing the tin-sulfur-tin mercaptide connectivity at issue is just an intellectual exercise and such intellectual exercises can postulate compounds containing the tin-sulfur-tin mercaptide connectivity which have tin percentages within the claimed percentages as well as tin percentages outside the claimed percentages." Although this finding was made in dealing with validity, it is equally applicable to infringement.
 
 
 16
 Professor Seyferth's testimony is insufficient to show that the district court's finding that the appellant had not proven that the appellee's products contained the amounts of tin and sulfur the patent specified, is clearly erroneous. On cross-examination, Professor Seyferth admitted that there were certain structures, including a structure proposed by Dr. Eckert, that would fall outside the claimed range for tin. When asked by the court to explain the apparent inconsistency of this admission with his earlier testimony, Seyferth replied: "Well, most of the ones that would fall out, like this, for instance, would be highly unlikely." The court apparently concluded, and we agree, that Seyferth's earlier testimony had been undermined by this exchange.
 
 
 17
 The appellant has not made a sufficient showing of the actual structure of the allegedly infringing components in the appellee's products, a showing necessary for us to conclude, in light of the court's finding to the contrary, that Seyferth's calculations were entitled to conclusive effect.
 
 COSTS
 
 18
 Costs to the appellee.