Albert D. DePAUL, Plaintiff,

v.

**GENERAL INSTRUMENT CORPORATION,**
Defendant.

**No. 91 Civ. 1901 (RWS).**

United States District Court,
S.D New York.

Sept. 11, 1991.

Albert D. DePaul, pro se.

Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City by Stephen B. Judlowe, Porter F. Fleming, of counsel, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff *pro se* Albert DePaul ("DePaul"), brought this action for patent infringement against defendant General Instrument Corporation ("GI") seeking injunctive and monetary relief. GI now moves to dismiss and for summary judgment pursuant to Rules 12(b)(6) and 56, Fed.R.Civ.P. For the reasons set forth below, GI's motions are denied.

*The Parties*

DePaul is the inventor and owner of U.S. Patent No. 4,783,699 entitled "Apparatus and Method for Transmitting Information by Modulated Video Signal," issued on November 8, 1988 (the "'699 Patent"). GI manufactures and sells television signal origination, distribution, and receiving electronic equipment.

*Prior Proceedings*

On March 20, 1991, DePaul filed a complaint against GI alleging infringement of the '699 Patent. On April 2, 1991, this court dismissed the complaint as too conclusory and granted leave to replead, 1991 WL 51139. DePaul filed an amended complaint on May 7, 1991.

GI filed this motion to dismiss and for summary judgment which was heard and considered fully submitted as of June 4, 1991.

*Facts and Claims of the Parties*

*The '699 Patent*

It is undisputed that DePaul is the inventor and owner of the '699 Patent. For a television signal to be developed into a viewable picture, special constituents in the television receiver, called "horizontal synchronizing pulses," are required to lock the television set with the incoming signal. The '699 Patent relates to a method and apparatus for encoding additional electronic signals into the horizontal synchronizing portion of a television video signal, by "amplitude modulating," or "piggybacking," the additional signal onto the existent horizontal synchronizing pulses of the television. The invention thus enables the utilization of television transmission links as a medium for transporting additional electronic signals simultaneously with the television video signal without increasing bandwidth. The invention is novel because of the method and location within the video signal for data insertion. Prior to the '699 Patent, the horizontal synchronizing pulse of the video signal had never contained any information other than horizontal synchronization. Any intelligence added to the video signal had been inserted within the

vertical blanking period and not during the active picture scan.

### Alleged Infringement by GI

DePaul accuses GI of infringing the '699 Patent with its VideoCipher II encryption technology ("VC II"). In support of his claim, he has offered a trade magazine article reporting that because the VC II "data stream uses up the entire horizontal and vertical interval-time spectrum ... picture synchronization and piggyback data services are transmitted within the [normal] bandwidth." *GI's VC II Encryption: Accepted, If Not Loved, Electronic Engineering Times*, Dec. 14, 1987, at 20. He has also submitted excerpts from the Video Cipher II Technical Manual ("VC II Manual"), which explain that "video information is *inverted between sync pulses*" and "[t]he audio ... is mixed with other bits of digital data and *inserted into the horizontal sync pulse*, then transmitted with the video signal." VC II Manual at 1 (emphasis added).

GI denies DePaul's accusation that the VC II infringes the '699 Patent. According to GI, all of the claims of the '699 Patent require the use of existent horizontal synchronizing pulses and amplitude modulation of data pulses. GI maintains that the VC II transmits no horizontal synchronizing pulses but rather removes synchronizing pulses and inserts data in their place. GI has referred the court to a different part of the VC II Manual, which states that "[t]he two audio channels, along with the addressing and control information and the auxiliary data channel, are digitally transmitted *in place of the horizontal sync pulse* in each video line.... Video security is provided by the *complete absence of all normal sync information (both vertical and horizontal)."* VC II Manual at 4 (emphasis added).

DePaul contests GI's assertion that the VC II does not use horizontal synchronizing information as a case of mere semantics. He maintains that in order for the VC II to accomplish its result it must use amplitude modulation of the horizontal synchronization pulses to change negative sensed signals into positive sensed pulses.

### Discussion

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that would entitle it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

Summary judgment pursuant to Rule 56, Fed.R.Civ.P., is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court is not expected to resolve disputed issues of fact, *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987), but to determine whether there are any factual issues which require a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. This is particularly true when the issue is one on which the opponent of summary judgment would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). While courts must proceed with great care in approaching a motion for summary judgment of patent infringement, it is appropriate to grant the motion if the non-movant fails to come forward with specific facts to show

there is a genuine issue for trial. *Chemical Engineering, Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed.Cir.1986).

*Standard for Proving Infringement*

■ The infringing stage of patent litigation involves two inquiries. First, as a matter of law, the court must determine the scope of the claims of the patent. Secondly, the trier of fact must make a factual finding as to whether the properly construed claims encompass the accused structure. *Texas Instruments v. United States Int'l Trade Comm'n*, 805 F.2d 1558, 1562 (Fed.Cir.1986); *Howes v. Great Lakes Press Corp.*, 698 F.Supp. 1120, 1124 (S.D.N.Y.1988).

*Proper Construction of the Claims of the '699 Patent*

■ The proper meaning of patent claims may be determined by looking at the relevant patent documents, including its specification and testimony by expert witnesses as evidence of the construction of claims as they would be construed by those skilled in the art. *Howes*, 698 F.Supp. at 1124.

The claims of the '699 Patent are limited by the use of amplitude modulation of horizontal synchronization pulses. For example, the following are claimed:

1. A circuit for encoding information upon horizontal synchronizing pulses in an active scan portion of a video field.... selectively passing said data bits to each horizontal pulse signal in said video field for amplitude modulating said horizontal pulse signals....

2. The encoding circuit of claim 1, wherein said selective means passes only binary data bits for modulating said horizontal pulse signals.

....

11. A binary method of encoding a television signal for the purpose of transmitting two differing forms of electronic information simultaneously between at least two locations, comprising the step of encoding information upon a video signal by amplitude modulating horizontal synchronizing pulses of said video signal

during an active scan portion of a video field.

Furthermore, in describing the background of the invention, the examiner writes:

What is novel to this invention is the method and location within the video signal for data insertion. Never before has the horizontal synchronizing pulse of the video signal contained any information other than horizontal synchronization.

Thus, to infringe this patent, an accused devise must be found to use amplitude modulation and horizontal synchronization pulses.

*Infringement by the VC II*

Construing the claims of the '699 Patent as limited by the use of amplitude modulation of existent horizontal synchronization pulses, GI's motions must be denied because a genuine dispute exists as to whether the VC II utilizes this method.

■ A case for infringement can be made out under either the doctrine of literal infringement or the doctrine of equivalents. Literal infringement requires that the accused device embody every element of the patent claim. *Mannesmann Demag Corp. v. Engineered Metal Prods., Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986). Under the doctrine of equivalents, an equitable concept whose purpose is to grant the inventor a fair scope, infringement may be found if the accused device performs substantially the same function in substantially the same way to accomplish substantially the same result as the claimed invention. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); *Texas Instruments*, 805 F.2d at 1563, 1571. Even under this more liberal approach, however, equivalence is not established by showing only accomplishment of the same result. *Texas Instruments*, 805 F.2d at 1571.

■ It is not disputed that the '699 Patent and the VC II achieve the same result. GI does contend, however than the VC II accomplishes the result in a substantially different manner than the patented meth-

od. Nevertheless, the excerpts of the VC II Manual, quoted by both parties in support of their positions, raise genuine questions as to whether GI's characterization of the VC II process is wholly accurate. It is certainly material in assessing equivalence whether the VC II "invert[s video information] between sync pulses" and "insert[s audio] into the horizontal sync pulse" VC II Manual at 1.

Moreover, DePaul's explanation of the VC II process, which he claims is possible only through amplitude modulation of the original horizontal synchronizing pulses, raises a material question that must be resolved by the trier of fact.

*Conclusion*

Because material questions of fact exist as to whether the claims of the '699 Patent properly construed encompass the VC II, GI's motion for summary judgment is denied. Because DePaul has stated a claim upon which relief may be granted, GI's motion to dismiss under Rule 12(b)(6), Fed. R.Civ.P. is also denied.

It is so ordered.