**HOGANAS, A.B., Plaintiff,**

v.

**A.P. GREEN INDUSTRIES, INC., Defendant.**

**Civ. A. No. 88–170–2–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Nov. 6, 1992.

Cubbedge Snow, Jr. (ADM), Martin, Snow, Grant & Napier, Macon, Ga., Richard Linn, Marks, Murase & White, Washington, D.C., for plaintiff.

Walter H. Bush, Jr., Anderson, Walker & Reichert, Macon, Ga., Donald E. Egan, Cook, Wetzel & Egan, Chicago, Ill., for defendant.

## ORDER

OWENS, Chief Judge.

Hoganas has brought this action against A.P. Green alleging that A.P. Green infringed its patent, United States Patent Number 3,982,953 (the " '953 patent"). A nonjury trial on this matter was held January 13–17, 1992. The court, after careful consideration of the evidence presented at the trial, arguments of counsel, and the record as a whole, hereby makes the following findings of fact and conclusions of law.

## FACTS

The '953 patent, entitled "Refractory Casting, Ramming or Stamping Mass," relates to monolithic (one piece) refractory masses containing grog and binder to which have been added "straw-shaped channel-forming elements." The straw-

shaped channel-forming elements, which are evenly distributed throughout the mass, shrink and burn out upon rapid drying at high temperatures (2000 degrees Fahrenheit or higher), automatically producing channels which permit the controlled escape of steam to avoid explosive spalling.

A refractory mass is a ceramic material used to line furnaces or kilns of, for example, the steel, glass, and cement industries. Refractory masses are composed of grog and binder and water to impart to the mass a fluidity or plasticity suitable for casting, ramming, or stamping.

Prior to Hoganas' invention, industries using refractory masses experienced costly downtime because the newly prepared and installed linings had to be fired slowly, at low heat-up rates, to avoid explosive spalling. Explosive spalling occurs when steam or water vapor deep inside the refractory becomes trapped and builds up high internal pressure. When the internal pressure exceeds the bonding strength of the castable, the mass cracks or explodes. Hoganas' invention prevents explosive spalling by adding into the dry refractory mix a relatively small amount of cut or chopped straw-shaped channel-forming elements which automatically provide channels for the fast, controlled release of steam during the rapid drying process.

In the specification of the '953 patent, Hoganas states that the preferable length of straw-shaped channel-forming elements is about 2 cm. In this connection Hoganas distinguishes between the size of materials suitable as straw-shaped channel-forming elements and common pore-forming materials, such as saw-dust, which does not counteract explosive spalling during the rapid drying process.

### Prosecution History of the Hoganas '953 Patent

On November 7, 1974, Paul Lennart Ivarsson and Ingvar Gustav Axel Blom filed an application in the United States Patent and Trademark Office entitled "Refractory Casting, Ramming or Stamping Mass." Hoganas claimed the following:

1. A refractory mass of the art known *per se* for casting, ramming or stamping refractory linings and for metallurgical ladles or tapping channels, based on refractory grog and binder, characterized by a low content of straw-shaped channel-forming elements equally distributed throughout the mass to make possible rapid-drying.

2. A refractory mass as claimed in claim 1, characterized in that the channel-forming elements are present in an amount from 0.05 to 0.35 percent by weight, based on the weight of the dry constituents of the mass before the addition of the channel-forming elements.

5. A refractory mass as claimed in any one of claims 1–4, characterized that the channel-forming elements have a length within the range of 1–6 cm.

The Patent Examiner rejected that application as being anticipated by any one of five references.[1]

Hoganas amended its application on October 1, 1975 by cancelling claims 1–6 and adding claims 7–13 (later renumbered claims 1–7 in the '953 patent). Claim 7, which is the focus of this dispute, was essentially a combination of original claims 1 and 2 as filed. Claim 8 is the same as claim 7, but also requires the straw-shaped channel-forming elements to have a length within the range of 1–6 cm. Thus, claim 8 was a combination of original claims 1, 2 and 5 as filed. Claims 7 and 8, as filed, read:

7. In a refractory mass of the type used for casting, ramming, or stamping refractory linings and for metallurgical ladles or tapping channels and composed of 60 to 95% by weight of refractory grog and 40 to 5% by weight of binder, the improvement which comprises said mass further containing 0.05 to 0.35% weight, based on the solids content of the mass without any additive, of straw-shaped channel-forming elements equally distrib-

**1.** Lenderoth U.S. Pat. No. 426, 643; Purdy et al. U.S. Pat. No. 1,345,632; Korber et al. U.S. Pat. No. 1,580,906; Whittier U.S. Pat. No. 2,012,798; and Matheny U.S. Pat. No. 2,224,459.

uted throughout the mass, whereby rapid drying of the mass is made possible.

8. In a refractory mass of the type used for casting, ramming, or stamping refractory linings and for metallurgical ladles or tapping channels and composed of 60 to 95% by weight of refractory grog and 40 to 5% by weight of binder, the improvement which comprises said mass further containing 0.05 to 0.35% by weight, based on the solids content of the mass without any additive, of straw-shaped, channel-forming elements having a length within the range of 1–6 cm, said elements equally distributed· throughout the mass, whereby rapid drying is made possible.

In seeking reconsideration of the amended claims, Hoganas argued:

> None of the references disclose the use of the straw-shaped channel-forming elements required by the present claims. Thus, all of the references relied on by the Examiner relate to the production of highly porous masses. Such highly porous masses cannot be used for the applications of the presently claimed mass since the porosity would completely impair or destroy the strength and slag resistance of the casted, rammed or stamped mass
>
> . . . .
>
> Moreover, as noted above and in the specification, it is the purpose of the present invention to facilitate the escape of water at the drying and burning of the mass, so as to enable a much more rapid drying than could be obtained hitherto. This is accomplished without the risk of cracking or bursting of the mass into pieces. It is not the purpose of the present invention to impart porosity to the refractory mass, and, in fact, such porosity does not occur with the presently claimed refractory mass.
>
> In accordance with the present invention, the increased drying rate is accomplished by utilizing a minor amount of straw-shaped, channel-forming elements as an additive to the mass. The references relied on by the Examiner disclose the addition of a relatively large amount of porous [sic] forming substances which

are commonly known for manufacturing porous insulating brick. Generally, the amount is about 50 to 60 percent by volume.

> Most certainly, there is nothing in the references which in any way discloses the use of the channel-forming elements as recited in Claim 8 and other dependent claims wherein the length of the straw-shaped channel-forming elements is from 1 to 6 cm. Certainly, in the present invention, one cannot use shorter lengths as disclosed on Page 4. Thus, the length should not be too short since then· only common pores rather than channels would be formed.

The Patent Examiner rejected these claims as being obvious over the Matheny patent. In issuing his final rejection, the Patent Examiner stated:

> Claims 7–13 are rejected as being unpatentable over Matheny. (35 U.S.C. § 103). The patentee discloses the use of 1–50% of shredded or comminuted paper in the preparation of light weight refractories. The patentee discloses that the use of this material is very beneficial in drying because of the capillary action of the fibers. Applicants' substitution of a straw-like material for the fiber of the reference would be a matter well within the skill of the art. Applicants' straw would be expected to function in a similar manner to the fiber used by the patentee.

### The Matheny Patent

The Matheny patent is directed to "refractory insulating bricks or the like of the type in which porosity is obtained by the admixture of· combustible materials in the clay before shaping and firing."· The claims of the Matheny patent involve the addition of 1% to 50% shredded or comminuted paper to the batch material of ·clay used to make the refractory insulating brick, tempering the batch in a wet state to produce a knurly and fibrous structure, molding the batch to the desired shape, and subjecting it to a firing temperature in a kiln to burn-out the paper. The paper additive is not only beneficial to the texture and

strength of the finished product, but is also beneficial in the drying process. As the patentee stated in the specification:

The use of such shredded or comminuted paper is also very beneficial in drying because of the capillary action set up throughout the fibers of the material. This results in low loss in burn-out material during the drying period, which is directly attributable to the uniformity of drying. The paper fibers themselves also add great strength in the dry or drying state, and there is substantially no loss in drying due to cracks or breaking in handling, which is common when materials of a non-fibrous nature are used.

It is also found that the firing or burning of the bricks is materially aided by the use of shredded or comminuted paper because the ignition of the finely divided paper fibers begins at a much lower temperature, approximately 400 degrees F., which is considerably below that of ordinary burn-out materials. The finely divided fibers burn-out at this stage, opening the channels for the escape of the gases from the heavier or coarser particles of burn-out materials which ignite later, thus preventing disruption of the clay body.

To overcome the Matheny patent, Hoganas argued:

Finally, it is further clear that the [Matheny patent] is directed to a method for producing a capillary action in the material. A capillary action is completely different from the type of action obtained with the channel-forming elements of the present invention. *Thus, the thickness of the channel-forming elements would generally be of a magnitude of 100 or more times the thickness of a material which would provide a capillary action.* Moreover, the action of the capillary is primarily to retain liquid which is opposite from the purpose of the channels utilized in the present invention. (emphasis added).

On or about March 19, 1976, the Patent Examiner issued his allowance of the claims.

### A.P. Green's "PLUS" Products

A.P. Green manufactures "PLUS" refractory masses. The PLUS refractories includes minute additions of solid polypropylene fibers (synthetic organic fibers) which pyrolyze (i.e. chemically change) upon heating the refractories to high temperatures.

The solid polypropylene fibers are approximately 22 microns in diameter. (Defendant's Ex. 85). As the tiny polypropylene fibers shrink, capillaries are formed. (Dr. Moore Testimony at 413). Capillarity facilitates the transport of water to the surface for evaporation during the rapid drying process. (Dr. Moore Testimony at 407).

### DISCUSSION

Hoganas contends that A.P. Green's PLUS line of castables falls precisely within the description of Hoganas' claim one. Hoganas also contends that the PLUS castables perform substantially the same function, in substantially the same way, to achieve substantially the same result as claim one of the '953 patent. A.P. Green contends in opposition that its PLUS refractories neither literally infringe nor infringe under the Doctrine of Equivalents. The court assumes without deciding that the '953 patent is valid.

### Infringement

A finding of infringement may occur under either of two theories, literal infringement or infringement under the doctrine of equivalents. The burden is on the patentee to show infringement by a preponderance of the evidence. *Manesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed.Cir. 1986).

### 1. Literal Infringement

In determining whether the patented invention has been literally infringed by defendant, the claim must first be defined and then applied to the alleged infringing product. *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448,

452 (Fed.Cir.1985). The first is a question of law; the second a question of fact. *Id.* If the properly interpreted claim covers the alleged infringing product, there is literal infringement. *Atlas Powder Co. v. E.I. Du Pont De Nemours*, 750 F.2d 1569, 1579 (Fed.Cir.1984).

In defining claims, courts consider the patent specification, the prosecution history, the other patent claims, the prior art and expert testimony. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed.Cir. 1985). The prosecution history of the patent limits claim interpretation by excluding definitions that have been disclaimed or disavowed during prosecution in order to obtain allowance of a claim. *Standard Oil Co.*, 774 F.2d at 452.

As defined by Webster's New World Dictionary, "straw" means "hollow stalks or stems." The American College Dictionary (1970) defines "straw" as "a hollow paper tube, plant stem, etc., used in drinking some beverages." Webster's New Universal Dictionary (1976) defines "shape" as "form, contour, or appearance." The specification of the '953 patent discloses that preferable channel-forming elements are straws or stalks of common cereals, grass, reeds or similar materials. The specification includes as specific examples of straw-shaped channel-forming elements wheat straw and plastic sipper straws. There is no disclosure of a solid fiber in the patent.

The polypropylene fibers used by A.P. Green in its refractories are solid, not hollow. Furthermore, the diameter of polypropylene is approximately 22 microns whereas the diameter of straw is approximately 2000 microns. (Defendant's Ex. 85). The thickness of straw, therefore, is approximately 90 times the thickness of polypropylene. In *Hoganas AB v. Dresser Industries, Inc.*, Civil Action Number 89–304 (W.D.Pa. Mar. 20, 1992), the court appointed master concluded that the tiny fibers "bear no resemblance to straw and cannot realistically be characterized as 'straw-shaped, channel-forming elements.'" This court similarly finds that polypropylene fibers are not "straw-shaped." The court further finds that polypropylene fibers are too small to be "channel-forming" as defined by Hoganas.

Accordingly, the court finds no literal infringement of claim one of the '953 patent by A.P. Green.

### 2. *Doctrine of Equivalents*

A.P. Green's refractories do not literally infringe Hoganas' claim one but may nevertheless infringe under the doctrine of equivalents. The doctrine of equivalents permits a finding of infringement when the alleged infringing product performs substantially the same function in substantially the same way to produce substantially the same result as the patented invention. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608–09, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

The doctrine of equivalents, however, may be limited by the prosecution history of application. The doctrine of prosecution history ("file wrapper") estoppel "precludes a patentee from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362 (Fed.Cir.1983). Prosecution history estoppel applies to amendment or abandonment of claims to overcome rejections based on prior art and to positions taken in order to obtain the patent. *Id.* (citations omitted).

The Patent Examiner initially rejected the '953 patent as being anticipated by any one of five references, including the Matheny patent. The Patent Examiner's final rejection was based on his opinion that Matheny's use of shredded and comminuted paper is very beneficial in drying because of the capillary action of the fibers and that Hoganas use of a straw-like material would be a matter well within the skill of the art. The Patent Examiner eventually approved claims 7–13 after Hoganas argued that the Matheny patent was directed to a method for producing a capillary action whereas claims 7–13 were directed to a completely different method.

To sway the Patent Examiner to issue a patent for its invention, Hoganas argued that "the thickness of the channel-forming elements would generally be of a magnitude of 100 or more times the thickness of a material which would provide a capillary action." In other words, Hoganas argued that its straw-shaped channel-forming elements function differently because they were much larger. Claims 7–13 were allowed only after Hoganas disclaimed capillary-size fibers from the scope of straw-shaped channel-forming elements. Hoganas is now precluded from claiming fibers of a thickness producing capillary action in a refractory mass infringes its '953 patent.

Accordingly, the court finds that A.P. Green's PLUS refractories and Hoganas' claim one are not equivalent.

### Conclusion

Having found no literal infringement or infringement under the doctrine of equivalents of the '953 patent, the court hereby DIRECTS the entry of judgment in favor of A.P. Green.

SO ORDERED.