CABOT SAFETY INTERMEDIATE
CORPORATION, Plaintiff,

v.

ARKON SAFETY EQUIPMENT,
INC. OF U.S.A, Defendant.

Civil Action No. 95–40190–NMG.

United States District Court,
D. Massachusetts.

March 31, 1999.

Arthur F. Dionne, Michael A. Cantor, Philmore H. Colburn, II, Leah M. Reimer, William J. Cass, Andrew C. Ryan, Fishman, Dionne & Cantor, Windsor, CT, for plaintiff.

James R. Cartiglia, Martha B. Allard, Jeffrey J. Miller, St. Onge, Steward, Johnson & Reens, Stanford, CT, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On October 5, 1995, Cabot Safety Intermediate Corporation ("Cabot") filed a patent infringement suit against Arkon Safety Equipment, Inc. of U.S.A. ("Arkon") alleging infringement of claim 1 of Cabot's Patent No. 4,867,149 ("the '149 patent") under 35 U.S.C. § 271. On October 17, 1997, this Court allowed Cabot's Motion for Partial Summary Judgment (Docket No. 29) with respect to the first six (but not the seventh) of Arkon's affirmative defenses and denied summary judgment on the issue of infringement.[1] Pending before this Court is Cabot's Renewed Motion for Summary Judgment on the issue of infringement (Docket No. 113).

### I. Factual and Procedural Background

The issue in the pending case is whether Arkon's marketed earplugs infringe Cabot's patent for earplugs. Cabot's patented earplug has an elongated stalk with a nose end and three hollow, rearwardly-extending, spaced-apart flanges. The flanges have substantially circular cross-sections of serially decreasing diameters, with the smallest diameter flange located at the nose of the stalk. Each of the flanges has a generally hemispherical shape, comprises a skirt of relatively uniform thickness (0.008 – 0.050 inches) and is composed of a resilient, polymeric material having a hardness value within certain limits. The diameter of the stalk provides an annular free space between the inner surface of the flange and the stalk.

Arkon offered for sale and/or sold two styles of earplugs, the ORIS® Comfort–Fit and the ORIS® Track–Fit Earplugs. Both earplugs have an elongated stalk with a nose end and three hollow, rearwardly-extending, spaced flanges. The flanges have substantially circular cross-sections of serially decreasing diameters, with the smallest diameter flange located at the nose of the stalk. Each of the flanges has a generally hemispherical shape, comprises a skirt of relatively uniform thickness within the limits described in the '149 patent and is composed of a resilient, polymeric material having a hardness within the limits described in the '149 patent. The diameter of the stalk provides an annular free space between the inner surface of the flange and the stalk. (Declaration of Ross Gardner, Jr.).

### II. Analysis

#### A. Legal Standard

■ The standard for summary judgment in patent litigation is the same as in any other kind of litigation. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984); *see also Avia Group Int'l Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988) ("[S]ummary judgment is as appropriate in a patent case as in any other"). Summary judgment is proper "in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576 (Fed.Cir. 1989); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting *Gar-*

---

1. Arkon raised seven "affirmative defenses":
   1. estoppel by laches and acquiescence;
   2. invalidity of the '149 patent under 35 U.S.C. §§ 102, 103;
   3. estoppel regarding assertion of certain claim constructions;
   4. invalidity of the '149 patent under 37 C.F.R. § 1.56(a);
   5. invalidity of the '149 patent under 35 U.S.C. § 112;
   6. lack of infringement of the '149 patent; and
   7. lack of willful infringement of the '149 patent.

*side v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

### B. Discussion

■ Cabot accuses Arkon's earplugs of infringing claim 1 of its '149 patent. Literal infringement requires that the accused device embody every element of the patent claim. *Mannesmann Demag Corp. v. Engineered Metal Products. Co.,* 793 F.2d 1279, 1282 (Fed.Cir.1986).

■ A patent infringement analysis involves a two-step inquiry: first, interpretation of the meaning of the claim language and second, a determination of whether properly interpreted claims encompass the accused structure. Claim interpretation is a legal question to be decided by the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The second inquiry—the question of infringement—is ordinarily a factual issue for the jury, but when the relevant material facts are not genuinely in dispute, the question of literal infringement "collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg. Inc.,* 73 F.3d 1573, 1578 (Fed.Cir.1996).

■ To interpret a claim, courts may refer to the specification, the prosecution history and the other claims in the patent. *Mannesmann,* 793 F.2d at 1282. The specification and prosecution history may only be relied upon insofar as they expressly define the words in the claim because those words are given their ordinary meaning unless the patentee has expressly varied that meaning. *Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 620 (Fed.Cir. 1995); *Markman,* 52 F.3d at 979 (stating that "a patentee is free to be his own lexicographer" but that "any special definition given to a word must be clearly defined in the specification").

Each of the claim elements in the instant case may be construed by reference to the ordinary meanings of the words or by reference to the specification of the '149 patent.[2] Arkon has failed to present any evidence in reply to the instant pending motion or in its response to Cabot's earlier summary judgment motion to suggest an

---

**2.** Claim 1 of the '149 patent reads, in its entirety:

An earplug composed of a resilient polymeric material and comprising:
an elongated stalk member having a nose end;
a flange array comprising at least three hollow, rearwardly extending flange elements of substantially circular crossections and of serially increasing diameters integrally affixed to said stalk member at spaced intervals along at least a portion of the length thereof, the flange element of the smallest diameter being located at said nose end;
each said flange element being of generally hemispherical shape, comprising a thin skirt having a substantially uniform thickness of between about 0.008 inch (0.20 mm) and about 0.050 inch (1.27 mm) and being composed of a resilient polymeric material of construction having a Shore A Durometer hardness value between about 10 and about 90;
the diameter of each portion of said stalk member underlying each skirt being such as to define an annular free space between the interior surface of said skirt and said stalk member.
Col 8, lines 21–42. The specification explicitly states that:
By "generally hemispherical" it is meant that the flange element defines no less than about 45% and no more than 55% of a chordally sectioned hollow spherical body

alternative construction for the elements of the claim.[3]

The second step in determining infringement is to compare the claims of the '149 patent and the allegedly infringing products made, sold and/or offered for sale by Arkon. Based upon a close analysis of the record, this Court concludes that Cabot has met its burden of establishing that all of the elements of claim 1 of the '149 patent are present in Arkon's accused earplug.

Cabot's contention of infringement is supported by the Declaration of Ross Gardner, Jr., ("Gardner") and statements of John G. Casali, Ph.D., CPE ("Casali") pursuant to Fed.R.Civ.P. 26(b)(4) ("Rule 26(b)(4)"). That evidence, unrebutted by Arkon, demonstrates that all elements of claim 1 are present in Arkon's allegedly infringing earplug.

On October 17, 1997, this Court denied summary judgment on the issue of infringement because a genuine issue of material fact existed as to whether Arkon's allegedly infringing earplugs embody the "thickness" element of claim 1 of the '149 patent.[4] Claim 1 of the '149 patent includes "flanges comprising a skirt of substantially uniform thickness of between about 0.008 inch and 0.050 inch". Although Gardner stated in his Declaration that the accused earplugs have flanges in the shape of a thin skirt with a substantially uniform thickness of between about 0.015 inch and 0.021 inch, Casali in his Rule 26(b)(4) Statement was unable to determine the thickness of the accused plugs. The absence of evidence of the thickness of the accused earplugs thus precluded summary judgment on the infringement issue at that time.

Since then, Casali has, however, traveled to Indianapolis to repeat Gardner's measurements. Based on 36 comparative measurements of the ORIS® Track–Fit Earplug and the ORIS® Comfort–Fit Earplug, Casali determined the flanges of the accused earplugs to have a substantially uniform thickness within the range of thicknesses prescribed in Claim 1 of the '149 patent, as reflected in his Supplemental Rule 26(b)(4) Statement dated November 13, 1997.

Additional discovery obtained after the original summary judgment briefs were filed further bolsters Cabot's position. For instance, Arkon's own design specifications require the flanges on the allegedly infringing earplug to be approximately .015 inches.

While Arkon summarily argues that Cabot cannot meet its burden of establishing that all the elements of claim 1 are present in the accused earplugs, Arkon fails to substantiate its allegations with

---

whose external surface is, at essentially all points thereon, substantially equidistant from the single geometric center thereof. Col. 3, lines 21–27.

**3.** In its Memorandum and Order of February 6, 1998, in *Cabot Safety Intermediate Corp. v. Howard S. Leight and Associates, Inc.*, this Court interpreted a "generally hemispherical" flange to mean "one whose boundaries form approximately half a sphere". Arkon argues that this Court is collaterally estopped in this case by its construction of the "hemispherical" language in *Leight*. This Court need not, however, rule on the merits of this argument because, given the facts of this case, applying the Court's claim construction in *Leight* would not alter this Court's disposition of the pending motion.

**4.** . In its Memorandum and Order entered October 17, 1997 (Docket No. 73), this Court stated that "Cabot presented unrebutted evidence that Arkon–USA's allegedly infringing earplugs embody every element of claim 1 of the '149 patent except thickness." Relying on that language, Cabot argues that the sole remaining issue with respect to the infringement inquiry in this action is whether the flange thickness of the accused ear plug meets the thickness limitation of claim 1 of the '149 patent.

Notwithstanding the wisdom of Cabot's argument, this Court, exercising an abundance of caution, has not limited its review to the thickness limitation of claim 1 of the '149 patent. Rather, it has considered here whether every element of claim 1 of the '149 patent is present in the accused earplugs, examining the entire summary judgment record created in the context of both the pending and earlier summary judgment motions.

admissible evidence. It is well settled that a nonmovant cannot defeat a properly supported motion for summary judgment by relying upon mere allegations or evidence that is less than significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the party opposing summary judgment must present "definite, competent evidence" to rebut the motion. *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994) (quoting *Mesnick*, 950 F.2d at 822); *see Moore's Federal Practice*, 3D, § 56.11(7)(b) ("[M]aking mere assertions via a legal memorandum (or even by affidavit) fails to set forth specific facts requiring need for trial; assertions are not facts.").

Specifically, Arkon relies on an interpretation by its own counsel of a drawing of the accused earplug to assert that the accused ear plug does not meet all the elements of claim 1. Unsupported by affidavits or expert testimony, Arkon's contentions are merely conjecture of counsel and fail sufficiently to rebut Cabot's evidence of infringement. Furthermore, as Cabot argues, submission of such evidence is unavailing at this late stage in the litigation, because none of Arkon's experts has examined the accused device and Arkon has disclosed no witnesses attesting to non-infringement. Arkon cannot, therefore, defeat summary judgment.

Thus, in light of Arkon's failure to rebut Cabot's evidence of infringement, this Court concludes that Cabot has met its burden of establishing that all of the elements of claim 1 of the '149 patent are present in Arkon's accused earplugs. Summary judgment in favor of Cabot on the issue of infringement will be allowed.

### ORDER

For the foregoing reasons, Cabot's renewed motion for summary judgment (Docket No. 113) is **ALLOWED**.