**DISPLAY TECHNOLOGIES, INC., Plaintiff,**

v.

**PAUL FLUM IDEAS, INC., Defendant.**

**No. 98 Civ. 5942 (RWS).**

United States District Court, S.D. New York.

Dec. 9, 1999.

Lieberman & Nowak, New York City, Arthur M. Lieberman, James M. Rhodes, of counsel, for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City, Edward V. Filardi, of counsel, for defendant.

Blackwell Sanders Peper Martin, St. Louis, MO, Samuel Digirolamo, of counsel.

## AMENDED OPINION

SWEET, District Judge.

Defendant Paul Flum Ideas, Inc. ("Flum") has moved: (1) pursuant to Rule 56 of the Federal Rules of Civil procedure for partial summary judgment of invalidity of Claim 1 of United States Patent No. 5,646,176 (the "'176 Patent"); and (2) pursuant to Rule 56 for summary judgment of noninfringement of the '176 Patent. For the reasons set forth below, Flum's motion for summary judgment with respect to invalidity of Claim 1 is granted. Flum's motion for summary judgment with respect to noninfringement is granted in part and denied in part.

### The Parties

Plaintiff Display Technologies, Inc. ("Display") is a corporation organized and existing under the laws of the State of New York, having a principal place of busi-ness at 111–01 14th Avenue, College Point, New York 11356.

Defendant Flum is a corporation organized and existing under the laws of Missouri, having corporate headquarters at 11100 Linpage Place, St. Louis, Missouri 63132.

### Prior Proceedings

On August 20, 1998, Display filed a complaint against Flum alleging infringement of the '176 Patent. On May 19, 1999, Flum filed the instant motions for summary judgment. Oral argument was heard on June 24, 1999, at which time the motions were deemed fully submitted.

### Facts

The facts as set forth below are derived from the complaint and the statements of the parties pursuant to Local Civil Rule 56.1, Local Rules of the United States District Courts for the Southern and Eastern District of New York and are uncontested except as noted.

### A. The '176 Patent

It is undisputed that Display is the owner and assignee of the '176 Patent, entitled "Display Rack with Channel Front Member." The '176 Patent was filed with the Patent and Trademark Office ("PTO") as application serial number 08/694,310 on August 8, 1996.[1] The '176 Patent is directed to an improved display rack for displaying and dispensing upright articles, such as beverage bottles or cans, from a refrigerated display case. The display rack of the '176 Patent generally consists of parallel channels for organizing and holding upright bottles or cans in a line, the channels being connected to each other in a side-by-side relationship. Because the underlying supporting shelf is slanted, the bottles in each channel slide forward, one at a time, as each lead bottle is dispensed by hand from the front.

The '176 Patent contains 28 claims directed to the various features of Display's purported invention.[2] The patent includes

---

1. The '176 Patent was filed in the name of Richard Jay.

2. Claims 5–6, 12–13, 18–20, and 27–28 are not now being asserted against Flum.

six independent claims and 22 dependent claims. Claims 1–20 and 28 each specifically require a display rack with a front member "secured to at least one of said sidewalls." Claim 1 is exemplary:

1. A display rack for supporting and displaying upright elongate articles, comprising:

A. a plurality of elongate channels, each said channel defining:

(i) a pair of laterally spaced upstanding sidewalls

(ii) a substantially planar article-supporting track connecting said sidewalls at the bottoms thereof,· and

(iii) a front member spaced above said track, secured to at least one of said sidewalls, and at least partially bridging the sidewalls; the bottom of said front member, the top of the front of said track and the front of said sidewalls cooperatively defining an aperture through which an upright substantial portion of a lead article in said channel may be viewed; and

B. means securing said channels in side-by-side, longitudinally parallel and transversely adjacent relationship.

Figure 1 of the '176 Patent shows a front member attached to at least one side wall. The specification of the '176 Patent defines a sidewall as "extending the length of the channel."

■ Claims 5, 6, 18–20 and 28 require, *inter alia,* display racks with "transparent" front members. Transparent materials are used, according to Display, for construction of the claimed display racks so as "not [to] interfere with viewing of the leading article in the channel." Claim 18 is illustrative and provides in relevant part:

18. A display rack for supporting and displaying articles, comprising:
***

(iii) a transparent front member formed of polypropylene disposed forwardly of the front of said track [secured to at least one of said sidewalls] [3] and at least partially bridging said sidewalls.

For securing the article display rack onto an underlying support shelf, the '176 Patent discloses upwardly extending bottom opening recesses located on the bottoms of the channel sidewalls, for telescopically receiving the upper rod of the front wall of the support shelf. Claims 14–16, 21–26 and 28 require either recesses or means for "telescopic receipt therein" of the front or back wall of the support tray. For example, Claim 21 provides in relevant part:

21. A display rack for supporting and displaying articles, for use with a supporting tray having at least one of a laterally extending upstanding front wall and laterally extending upstanding back wall, comprising:

(A) a plurality of elongate channels defining:

(i) a pair of laterally spaced upstanding sidewalls . . . said sidewalls being configured and dimensioned to . . . define a plurality of laterally aligned and laterally spaced pairs of upwardly extending bottom-opening recesses adjacent to the front and back thereof for telescopic receipt therein of at least one of a tray front wall and a tray back wall.

As disclosed in the drawings and specification of the '176 patent, the phrase "telescopic receipt" requires that the rod of the

---

3. The current version of the '176 Patent published by the PTO contains a printing error with regard to claims 18 and 28. As discussed in further detail below, the limitation "secured to at least one of said sidewalls" was added to claims 1, 18 and 28 via an Examiner's Amendment of March 3, 1997 (*See* Malone Decl.Exh. 4 at 2). The PTO's current printed version of the '176 Patent includes this language in claim 1, but fails to reflect the Examiner's Amendment in claims 18 and 28. However, it is the Examiner's Amendment that is controlling to the scope and content of claims 18 and 28, not the erroneous printed version of the '176 patent. *See Multifastener Corp. v. MacLean–Fogg Co.,* 572 F.Supp. 418, 425 (E.D.Mich. 1983).

support rack be within the recess of the sidewall.

To secure two or more channels in a side-by-side manner to form a multi-channel display rack, the '176 patent discloses what it terms a "key-and-keyhole releasable locking system." Claims 27 and 28 both require the "key-and-key hole limitation." Claim 27 provides:

27. A key-and-keyhole releasable locking system for a pair of adjacent display rack channels, comprising:

(A) a generally flat lateral projection in the nature of a key disposed on one sidewall of one pair of adjacent display rack channels, and having

(i) an inner portion substantially flat on both the top and bottom surfaces thereof,

(ii) a middle portion substantially flat on one of said surfaces and defining a transverse flange extending normal to the substantially flat surface thereof, and

(iii) an outer portion substantially flat on the other said surfaces and defining a transverse flange extending normal to the substantially flat surface thereof, and

(B) a through-hole in the nature of a keyway disposed on an adjacent sidewall on the other of the pair of adjacent display rack channels, and having

(i) a substantially planar inner portion defining a portion of a keyhole in the plane of said adjacent sidewall, and

(ii) a substantially planar outer portion defining the remaining portion of a keyhole in a plane parallel to said adjacent sidewall plane;

said through-hole defining a large passageway enabling passage of said key, and a restricted passageway communicating with said large passageway and enabling passage of said key only via said large passageway; whereby, when said key is fully inserted into said restricted passageway, said transverse flange of said outer portion of said keyhole, and said transverse flange of said central portion of said key bears on an inner surface of said outer portion of said keyhole.

## B. *The '176 Patent Prosecution History*

After the filing of the patent application Serial No. 08/694,310, but before its issuance, in an Office Action dated December 13, 1996, the PTO rejected Claims 1–4, 7–9, 11–15, 17, 21–22, and 24 of the application under 35 U.S.C. § 102(b) as being anticipated by United States Patent No. 4,228,903 (the "Eckert Patent"). In a response dated December 30, 1996, Display amended Claim 1 to cover only display racks for supporting and displaying "upright and elongate" articles. In support of the allowability of the amended claims, Display stated:

Eckert discloses a gravity feed can dispenser for beverage coolers where the cans are disposed horizontally on their circumferential sides, rather than (vertically) upstanding on their longitudinal ends. Contrary to this teaching of Eckert [*sic*], Claim 1 clearly requires that the display rack support and display "upright and elongate articles" and that the aperture formed by the various parts thereof must allow viewing of a substantial portion of "an upright lead article in said channel."

In describing the purported novelty of this "aperture formed by the various parts thereof," Display stated that "it is clear that [in Eckert] no aperture whatsoever is formed 'by the bottom of said front member, the top of said track, and the front of said sidewalls.'"

In a Notice of Allowability dated February 26, 1997, the PTO Examiner stated:

the cited prior art of record, alone or in combination, does not disclose a display rack having the bottom of a front member, the top of the front of a track and the front of the sidewalls defining an aperture through which a substantial portion of an upright lead article in the channel may be viewed. Nor is there shown a display with telescopic receipt

of at least one of the front wall and back walls of the tray.

## C. *Alleged Infringement by Flum*

Display accuses Flum of infringing the '176 Patent with its GLOBE GLIDE display rack.

Plaintiff's product was originally designed for exclusive use by the Coca Cola Company ("Coke"), and Flum's product was prepared for exclusive use by the Pepsi–Cola Company ("Pepsi"). Display contends that in 1997, Pepsi, having seen Display's display rack, suggested to Flum that it wanted a new rack for its refrigerated display case and specifically referred Flum to Display's "Coca Cola" rack. Display avers that Donald Miller, Jr., the Flum Vice President of Sales and Product Manager for developing Flum's GLOBE GLIDE, "even specifically discussed the Flum 'multiple stop feature' being 'like' the [Display] rack." Thus, Display contends it is not surprising that "the resulting GLOBE GLIDE display rack is an infringing copy of the patented Display Technologies rack." Flum denies Display's accusation that the COOL GLIDE IV infringes the '176 Patent.

## *Discussion*

### *Legal Standard for Summary Judgment*

The motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long*

*Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland,* 1992 WL 8347, *4 (S.D.N.Y. Jan.14, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219 (2d Cir. 1994).

"Summary judgment is as appropriate in a patent case as in any other. Where no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of Fed.R.Civ.P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik v. Murata Machinery Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984); *see also SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (*en banc* ). However, under 35 U.S.C. § 282, a patent is presumptively valid, and thus the party moving for summary judgment must demonstrate by clear and convincing evidence that the patent is invalid. *See, e.g., Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed.Cir. 1986).

### I. *Claim 1 of the '176 Patent is Invalid*

Flum has moved for partial summary judgment and asserts that Claim 1 of the '176 Patent is invalid because the claimed subject matter is anticipated by and/or obvious in view of various prior patents.

#### A. *Anticipation*

■ Section 102(a) provides that a patent is invalid if "the invention was known or used by others in this country, or patented or described in a printed publication

in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). From this provision comes the doctrine of anticipation: "That which would literally infringe if later in time anticipates if earlier than the date of invention." *Evans Medical Ltd. v. American Cyanamid Co.*, 11 F.Supp.2d 338, 365 (S.D.N.Y.1998) (*quoting Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed.Cir.1987)).

A party asserting that a patent claim is anticipated under 35 U.S.C. § 102 must demonstrate, among other things, identity of invention. To anticipate a claim, a prior art reference must disclose every feature of the claimed invention either explicitly or inherently, *see Hazani v. United States Int'l Trade Comm'n*, 126 F.3d 1473, 1477 (Fed.Cir.1997); *Glaxo Inc. v. Novopharm, Ltd.*, 52 F.3d 1043, 1047 (Fed.Cir. 1995). Anticipation is a question of fact, and thus summary judgment is appropriate where "[t]here is no genuine issue of material fact that each element of the [challenged] claims is found in a single prior art reference." *Meyers v. Asics Corp.*, 865 F.Supp. 177, 179 (S.D.N.Y. 1994); *see also Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1571–72 (Fed.Cir.1997).

### B. *Obviousness*

In addition to the novelty requirement of Section 102, a patent is required to be non-obvious pursuant to 35 U.S.C. § 103 which provides in pertinent part:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Obviousness is a question of law based upon the underlying facts of four general categories: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill at the time the invention was made; and (4) any objective considerations that may be present. *See Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Continental Can Company USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1270 (Fed. Cir.1991).

Where the legal conclusion of obviousness is disputed, but the underlying facts are not, there is no issue of fact requiring a trial and summary judgment is appropriate. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed.Cir.1988). In addition, summary judgment of invalidity based on obviousness may be granted to invalidate patent claims when the subject matter of the invention and the prior art are so readily understandable as to eliminate any genuine issue of fact. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573 (Fed.Cir.1984).

Preliminary to a determination of anticipation and/or obviousness is construction of the claims to determine their meaning, which is a matter of law for the court. *See Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983).

### C. *Claim Construction*

Courts have the "power and obligation to construe as a matter of law the meaning and language used in patent claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). It is well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *See Markman*, 52 F.3d at 979.

Even within the intrinsic evidence, however, there is a "hierarchy of analytical tools." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir.1998). "The actual words of the claim are the

controlling focus." *Id.* Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996).

It is then necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* The Federal Circuit has oft stated that "[c]laims must be read in view of the specification of which they are a part." *Markman,* 52 F.3d at 979. The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, "the specification is highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582.

The court may also consider the prosecution history of the patent, if in evidence. *See Markman,* 52 F.3d at 980. This history contains the complete record of all the proceedings before the PTO, including any express representations made by the applicant regarding the scope of the claims. Accordingly, the record before the PTO "is often of critical significance in determining the meaning of the claims." *Vitronics,* 90 F.3d at 1582. Included within an analysis of the file history may be an examination of the prior art cited therein. *See id.* at 1583.[4]

### D. Claim 1 Was Anticipated By Prior Art

▬ As noted above, the Patent Examiner found that the novel and/or patentable feature of Claim 1 is the aperture element, that is, an "aperture through which an upright substantial portion of a lead article in said channel may be viewed." [5] Display submits that the term "aperture" as recited in Claim 1 means "a three-dimensional, semi-cylindrical space," and points to Column 6, lines 10–24 of the specification to support its contention that the language of Claim 1 "does not simply mean a planar opening or window behind which a bottle or can may be viewed, such as described in the prior art cited by Flum." (Plaintiff's Brief at 10). Display asserts that the word "quadrant" from the specification and the phrase "three-dimensional, semi-cylindrical space," indicate that Claim 1 includes a "fuller view."

Display's proposed language, *i.e.* "three-dimensional, semi-cylindrical space," is not mentioned in Claim 1 or anywhere else in the '176 Patent. Indeed, Display's proposed construction of Claim 1 is based primarily on attorney argument which cannot control in light of the intrinsic evidence. *See Insituform Technologies, Inc. v. Cat Contracting, Inc.,* 99 F.3d 1098, 1106 (Fed.Cir.1996) ("attorney argument cannot control in light of the language of the claim.") *cert. denied,* 520 U.S. 1198, 117 S.Ct. 1555, 137 L.Ed.2d 703 (1997). More-

---

4. In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such instances, it is improper to rely on extrinsic evidence. *See Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216 (Fed.Cir.1995).

5. As noted, the PTO Examiner's statement of reasons for allowance states that "the cited prior art of record, alone or in combination, does not disclose a display rack having the bottom of a front member, the top of the front of a track and the front of the sidewalls defin-

ing an aperture through which a substantial portion of an upright lead article in the channel may be viewed." Display notes that the reasons for allowance also state that "[n] or is there shown a display with telescopic receipt of at least one of the front wall and back walls of the tray." However, Claim 1 does not disclose or in any way relate to a "display with telescopic receipt of at least one of the front wall and back walls of the tray." Thus, the sole reason for allowance of Claim 1 was the aperture element.

over, Display's attempt to read additional limitations into Claim 1 is prohibited. *See Ecolochem v. Southern California Edison Co.*, 1996 WL 297601, at *3 (Fed.Cir.1996) ("we are precluded from rewriting the patent claim to include unclaimed limitations even where the specification contains adequate support thereof."); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n. 16 (Fed.Cir.1990) ("Nothing in any precedent permits judicial redrafting of claims."); *cf. Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed.Cir. 1988) ("Where some claims are broad and others narrow, the narrow· claim limitations cannot be read into the broad whether to avoid invalidity or escape infringement.") (*quoting Kalman*, 713 F.2d at 770).

Even accepting, *arguendo*, Display's construction as permissible, proper reference to the disclosure of the '176 Patent as a whole indicates that the claimed aperture element is broader than Display proposes. The pertinent part of Column 6, lines 10–24 states:

> The aperture thus formed is preferably generally rectangular in outline.... Even where the front member is not transparent or not present, the aperture typically presents substantially a full quadrant of the lead article A' for view by a potential customer, the quadrant mentioned being the bottom half of the front half of the article. Such a quadrant in the case of a bottle typically extends the full width of the bottle and upwardly for about one third to about one half the height of the bottle, typically an area of about 10 square inches.

The planar opening described is "rectangular" (col. 6, line 11) and "typically of an area of about 10 square inches." (col. 6, lines 23–24). If the claimed aperture was a "three-dimensional, semi-cylindrical space," as Display maintains, it could not be described as a two-dimensional "rectan-

gular outline," rectangles being planar structures. Similarly, "an area of about 10 square inches" indicates a planar structure, "area" and "square" both connoting a two-dimensional viewing area.

### 1. *The Allen Patent*

Flum contends that the Allen United States Patent No. 2,572,090 (the "Allen Patent"), entitled "Refrigerator Rack Bottle Guide," issued October 23, 1951, several decades before the '176 Patent, disclosed. the aperture element and every other element of Claim 1, even though the Allen Patent was not cited or considered by the PTO in its examination of the application for the '176 Patent. The 1951 Allen Patent discloses a display rack for upright bottles. Figure 1 of the Allen Patent specifically discloses a rectangular aperture defined by the by the bottom of the front rail member, the top of the support track's front to rear rods, and the front of the sidewalls. (Col. 2, lines 8–47). In addition, Allen teaches that the front rail member, which, is affixed to the front of the sidewall guide members and fixes the height of the aperture, is "spaced above" the basal structure or track. (Col. 2, lines 52–53). As seen in Figure 1 of the Allen patent, an aperture allowing viewing of the lead article in the channel is disclosed.

The most effective way to demonstrate the anticipation by Allen of Claim 1 is to examine each element of Claim 1 and compare these to the Allen Patent. *See Meyers*, 865 F.Supp. at 180. Such examination reveals that the Allen Patent discloses a display rack that embodies each and every element of Claim 1 of the '176 Patent. The Allen Patent contemplates a "display rack for supporting and displaying upright elongate articles, comprising" "a plurality of elongate channels." Similarly, the Allen Patent teaches that "each channel has a pair of laterally spaced upstanding sidewalls;" the "substantially planar" track;[6]

---

6. Display contends that the Allen Patent does not show "a substantially planar track connecting the sidewalls at the bottom thereof," but instead shows wire runner's which run parallel to the sidewalls and do not connect to

the sidewalls. Flum counters that it is these "runners" that create a planar track surface upon which the bottles are maintained up-

the "front member;" and the "securing means" all as recited from Claim 1 of the '176 Patent.[7] Significantly, the Allen Patent discloses an aperture through which an upright portion of a lead article in the channel may be viewed.[8]

Plaintiff asserts that the aperture disclosed in the Allen Patent does not anticipate Claim 1 under 35 U.S.C. § 102. In support of this contention, Display proffers Plaintiff's Exhibit H in which it colors in red the sidewalls of the Allen device pictured in Figure 1 for the proposition that "the sidewalls conceal a significant portion of the lower quadrant of the bottle." This assertion fails based on the language of the '176 Patent. Column 6, lines 15–19 only require that "where the front member is not transparent, but assuming that any secondary or auxiliary front wall is either transparent or not present, the aperture typically presents substantially a full quadrant of the lead article A' for view." Figure 1 is a side view of a single embodiment of the device claimed in the Allen Patent. However, the disclosure of the Allen Patent is not limited to the view of the embodiment shown in Figure 1. If a frontal view of Figure 1 is considered, the aperture claimed in the '176 Patent is disclosed since the sidewalls would not be visible and the lower quadrant would be viewed. *See Ultradent Prods., Inc. v. Life–Like Cosmetics, Inc.,* 127 F.3d 1065, 1068 (Fed.Cir. 1997) ("The district court thus erred by construing the scope of the Rosenthal [pri-

or art] disclosure as limited to the preferred embodiment.").

■■■ Thus, each of the elements of Claim 1 were fully anticipated by the Allen Patent in 1951. Therefore, Claim 1 is invalid under 35 U.S.C. § 102.[9]

### 2. *The Vineyard Patent*

Flum also contends that Claim 1 is anticipated by United States Patent No. 2,218, 444 to Vineyard, George S. (the "Vineyard Patent").[10] The 1940 Vineyard Patent discloses a display rack for upright bottles which the patentee terms a "merchandise dispenser." In the Vineyard Patent, an aperture through which the lead upright bottle may be viewed is defined by the bottom of the front member, the top of the front of the support track, and the front of the sidewalls. In Figure 1 of the Vineyard Patent, the aperture is represented as being generally rectangular in shape. Figure 2 of the Vineyard Patent depicts upright milk bottles in the rack, revealing the aperture as being one through which a substantial portion of the lead upright milk bottle in the channel may be viewed. Furthermore, as described in the specification of the Vineyard Patent, the front member "extends transversely across the forward end of the trough, being curved transversely thereof, to form a stop for the bottles," which are depicted in Figure 2 as being engaged by

---

right. Indeed, the sidewalls in Allen Figure 1 can be seen to connect the planar surface.

7. Display asserts that the Allen Patent does not show a "means securing the channels inside by side [*sic*], longitudinal parables [*sic*] and transversely adjacent relationship." However, if the channels shown in Figure 1 of Allen were not secured in a "side-by-side, longitudinally parallel and transversely adjacent relationship," then the channels in Allen would not be functional. Therefore, there must be included in the Allen Patent some "means" for so securing the channels. (*See* Malone Decl., Exh. 2, Fig. 1).

8. As set forth above, the PTO was of the impression that the prior art display racks did not disclose such an aperture.

9. Display contends that the commercial success of its display rack is evidence of the validity of the '176 Patent. However, commercial success is relevant to the issue of obviousness under 35 U.S.C. § 103; it is completely irrelevant to the issue of anticipation under 35 U.S.C. § 102. *See, e.g., Application of Lachance,* 55 C.C.P.A. 918, 390 F.2d 990 (1968).

10. It is undisputed that the Vineyard Patent was not cited or considered by the PTO in its examination of the application for the '176 Patent.

the front member adjacent to, above, and no lower than the center of inertia of such bottles. (Column 2, lines 23–25).

Figure 1 and Figure 2 of the Vineyard Patent explicitly disclose a "display rack for supporting and displaying upright elongate articles;" "a pair of laterally spaced upstanding sidewalls;" a "substantially planar article-supporting track connecting said sidewalls at the bottom thereof;" "a front member spaced above said track, secured to at least one of said sidewalls; and at least partially bridging said sidewalls;" and an aperture through which an upright portion of a lead article in the channel may be viewed, all as recited from Claim 1 of the '176 Patent.

 Display submits that the Vineyard Patent does not disclose a plurality of channels or a means for securing the channels in a side-by-side relationship.[11] Flum counters that these elements are inherently described in the Vineyard Patent. A prior art reference may serve as an anticipation of the patented invention even where the reference is silent about a particular characteristic of the invention, if extrinsic evidence establishes that the characteristic is inherent in the reference. *See Continental Can,* 948 F.2d at 1268–69 ("To serve as anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with evidence … sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function.") (citations omitted). However, the extrinsic evidence must clearly establish that the missing characteristic is necessarily present in the reference and that a person of ordinary skill in the art would recognize the characteristic as inherent in the reference. *See id.* at 1268. In the present action, Display has admitted that a

person of ordinary skill in the art in 1995 would have known that display racks like those taught by Vineyard are manufactured and designed for use in a large refrigerator capable of holding many such racks in a side-by-side, longitudinally parallel and transversely adjacent relationship. The '176 Patent acknowledges that such means were known in the art (*see* col. 2, lines 50–63), and the PTO Examiner specifically noted and rejected the inventiveness of these means over several pieces of cited prior art. (*See* Malone Decl. Exh. 4 at 7).

Accordingly, Flum has met its burden of showing that Claim 1 is invalid due to anticipation by the Vineyard Patent.[12]

### Patent Infringement

Flum also moves for summary judgment on the grounds that the Flum GLOBE GLIDE display rack does not infringe the '176 Patent literally or under the doctrine of equivalents.

#### A. *Literal Infringement*

 In order to prove literal patent infringement the patent owner has the burden of showing that every limitation (*i.e.,* each stated element recited in the patent claim) is exactly found in the accused device. *See Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1105 (Fed.Cir.1996); *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562 (Fed.Cir.1991).

The determination of whether a patent claim has been infringed requires a two-step analysis. " 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.' " *Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353 (Fed.Cir.1998) (*quoting Carroll*

---

11. As with the Allen Patent, Display also contends that the aperture disclosed in the Vineyard Patent does not anticipate Claim 1 under 35 U.S.C. § 102 and asserts that "the sidewalls conceal a significant portion of the lower quadrant of a bottle." However Display's

contention is erroneous for the reasons stated above with respect to Allen.

12. While Claim 1 is arguably invalid under 35 U.S.C. § 103 as obvious in light of the Allen and Vineyard patents, given the above findings, this issue need not be reached.

294

*Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993)).

■ The first step, claim construction is a question of law for the court. *See Carroll Touch, Inc.*, 15 F.3d at 1576. As described more fully above, to construe the claims, the court should look first to the "intrinsic evidence," that is, the claim language itself, the patent specification, and the prosecution file history. *See Vitronics*, 90 F.3d at 1582. "If upon examination of this intrinsic evidence the meaning of the claim language is sufficiently clear, resort to extrinsic evidence, such as treatises and technical references ... should not be necessary." *Digital Biometrics, Inc.*, 149 F.3d at 1347.

■ The determination of literal infringement—whether the properly construed claims read on the accused product—is a question of fact. *See, e.g., Johns Hopkins*, 152 F.3d at 1354. However, where there is no genuine fact dispute regarding the structure of the accused product, and the sole issue before the court is claim construction, the question as to literal infringement "collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996).

## B. *The Doctrine of Equivalents*

■ The doctrine of equivalents permits a finding of infringement when the accused product varies only slightly from the literal words of the patent claim, thus protecting the inventor from infringers who attempt to evade liability for copying the invention by making minor changes. *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). A product that "performs substantially the same function in substantially the same way to obtain the same result" as the invention will be found to "infringe under the doctrine of equivalents." *Id.* The doctrine of equivalents, however, is not an invitation to the court to eliminate particular limitations provided by the language of the patent claim. *See*

*Hilton Davis Chem. Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512, 1528–29 (Fed.Cir.1995) (*en banc*), *rev'd on other grounds*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Rather, the court must apply the doctrine of equivalents on an element-by-element basis, finding infringement only where the accused product embodies either literally or by substantial equivalence each limitation of the claim. *See id.* As recently stated by the Supreme Court, the doctrine of equivalents requires the court to determine whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson*, 520 U.S. at 39, 117 S.Ct. 1040. "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Id.*

### 1. *Requirement of a Front Member Attached To At Least One Side Wall*

■ The claims, specification, and prosecution history of the '176 Patent dictate that the '176 Patent be construed so as only to cover display racks having a front member which is attached to at least one sidewall. Each of claims 1–20 and 28 specifically have the limitation that the front member be "secured to at least one of said sidewalls."

Display's attempt to obtain claims covering a front member without the requirement that it be attached to at least one of the sidewalls were rejected by the PTO. In Display's initial application to the PTO, it sought claims not limited to a front member secured to at least one of two sidewalls. Claim 1 of the application stated in pertinent part:

1. A display rack for supporting and displaying articles, comprising:

 (A) a plurality of channels, each said channel defining

 (i) a pair of laterally spaced upstanding sidewalls,

(ii) a substantially planar article-supporting track connecting said sidewalls at the bottoms thereof, and

(iii) a front member spaced above said track and at least partially bridging said sidewalls....

The PTO rejected Claim 1 of the pending application as anticipated by the Eckert Patent. In particular, the PTO Examiner noted that Eckert disclosed "a front member disposed forward of the track...." (*See* PTO Action dated December 13, 1996). Prior to the allowance of the '176 Patent, the PTO Examiner specifically required, and Display agreed, to the amendment of pending Claims 1, 18, and 28 to incorporate the phrase "secured to at least one of said sidewalls." (*See* Examiner's Amendment dated March 3, 1997). "[A] patentee, after relinquishing subject matter to distinguish a prior art reference asserted by the PTO during prosecution, cannot during subsequent litigation escape reliance ... upon this unambiguous surrender of subject matter." *Spectrum Int'l, Inc. v. Sterilite Corp.,* 164 F.3d 1372, 1378.

Flum asserts that the GLOBE GLIDE display rack does not employ a front member secured to at least one sidewall, but rather is defined by a pair of upright posts located at the front portion of each product module. Flum submits that its forward posts are structurally and functionally distinct from the sidewalls claimed in the '176 Patent, and urges that it is "clear that those of ordinary skill in the art of display racks do not consider a post to be the same as a sidewall." (Defendant's Brief at 14).

In support of its claim, Flum offers the May 25, 1999 deposition testimony of Donald Miller, Jr. ("Miller"), Flum's Senior Vice President of Sales, in which Miller distinguishes between a post and a sidewall and explains the reasons that Flum designed the front posts of the GLOBE GLIDE in a manner "wholly different from sidewalls." (Defendant's Reply Brief

at 2). During his deposition, Miller described the "opening" between the front posts and the sidewalls as specifically designed to "allow the bottle to travel into the first position" since "without a window ... the vertical member is too thick [such that] if this thickness were to continue back, the bottle would not move into [that] first position." (Miller Depo., p. 82). When asked, "Why not make the post thinner?", Miller explained that the "post had to be that thickness in order for the catching mechanism to ... grab the graphic label." (*Id.* p. 83). Flum maintains that it is "precisely these two design mechanisms, the separation of the sidewall and the thickness, that distinguish Flum's front posts from the claimed Display sidewall." (Defendant's Reply Brief at 3).

Despite Flum's commendable efforts to distinguish its front post from Display's sidewall, it is not clear at this stage that the distinction is more than one of semantics. As the Supreme Court has stated, "if two devices do the same work the same way, and accomplish the same results, they are the same, even though they differ in name ..." *Graver Tank,* 339 U.S. at 608, 70 S.Ct. 854.[13] Based on the record presently before the Court, a reasonable finder of fact could find that the front post attached to the sidewall in the Flum device effectively functions as the sidewalls required by the claims of the '176 Patent. Accordingly, summary judgment is inappropriate as to whether the GLOBE GLIDE literally infringes Claims 1–20 of the '176 Patent.

**2. Claims Requiring Recesses or Means of Telescopic Receipt for a Support Tray Wall**

Claims 14–16, 21–26 and 28 of the '176 Patent require recesses or means for "telescopic receipt" of a support tray wall. Flum asserts that the GLOBE GLIDE display rack does not literally infringe

---

**13.** For this reason, Flum's assertion that counsel for Display calling Flum's front posts "posts" "constitutes adequate and separate

grounds for summary judgment of noninfringement of Claims 1–20 of the '176 patent" is without merit.

these claims as the GLOBE GLIDE does not have recesses or means for telescopic receipt of an underlying support rod. Rather, the GLOBE GLIDE display rack employs an I-shaped member that abuts the support shelf front rod by the Flum GLOBE GLIDE display rack. There is no telescopic receipt of a rod.

 In opposing Flum's contention, Display relies solely on paragraphs 23 and 24 of the Declaration of Richard Jay, patentee and inventor of the '176 Patent.[14] However, where, as here, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence. *See Pall Corp.*, 66 F.3d at 1216.

Column 7, line 56 to column 8, line 47 of the specification for the '176 Patent describes the "recesses" at issue as "define[d]" by "the bottoms of the channel sidewalls," and are pictured and referenced in Figure 1 of the '176 Patent as, essentially, recesses cut out of the bottoms of the sidewalls. Further, "[e]ach of the recesses, is configured and dimensioned to receive telescopically therein the upper rod of the front wall of the support shelf." Contrary to Display's assertions, the telescopic receipt "feature" is neither (1) "to telescope out or extend out the front bottle in the rack beyond the edge of the shelf"; nor (2) "the ability to extend the rack out to overhang the supporting shelf." (*See* Jay Decl. ¶¶ 22–24). Rather, as the patent language states, the claimed "vertical telescopic action" is no more than the "engagement" of the "upper rod" of the underlying support rack in a "relatively snug" fit or "telescopically therein" the recess, and the corresponding ability of the "recesses to receive telescopically therein

the upper rod of the support shelf." (Column 7, line 65 to column 8, line 8); (*see also* Figs. 1 & 6 of the '176 Patent).

The description in lines 28–33 of column 8 is particularly illuminating. This portion reads: "In other words, the vertical telescopic action between the display rack recesses and at least one of the support shelf front and back walls, enables the article-supporting length of the display rack to exceed the length of the support shelf." As quoted, the "telescopic action" is "vertical," meaning, as shown in Figure 6 of the '176 Patent, the display rack recess is on top and the upper rod of the underlying support shelf moves up into and fits up inside the bottom of the recess. The "telescopic action" is "between" the recess and the shelf upper rod, as the rod fits into the recess. Moreover, the "vertical telescopic action . . . enables the . . . display rack to exceed the length of the support shelf," and therefore, the "vertical telescopic action" cannot be the resulting ability of the rack to exceed the length of the support shelf, as Display contends. If it were, the language quoted above in column 8, lines 28–33 would stand for the nonsensical proposition that the "vertical telescopic action" "enables" the "vertical telescopic action."

· A comparison of the correct construction of the recess claims with the structure of Flum's GLOBE GLIDE rack reveals that (1) the GLOBE GLIDE rack uses an I-beam abutment member; (2) the GLOBE GLIDE rack has no recesses, as that term is defined in the '176 Patent; and (3) the GLOBE GLIDE rack does not employ "vertical telescopic action," or "telescopic receipt."

---

14. Paragraphs 23 and 24 read as follows:
23. These features of presenting substantially the entire lower front quadrant of a lead bottle and of permitting the rack to be extended out beyond the leading edge of the supporting shelf have been overwhelmingly effective in driving the success of my new "Visi Slide" rack.
24. In looking at the Flum advertisement which is EXH. 13 to Flum's Motion for

Non–Infringement, on the back of the advertisement, Flum compares the Display Technology rack . . . and the Flum "Globe Glide" rack. The "Globe Glide," rack. The "Globe Glide," as Flum explains, has four different settings to position the unit progressively closer to the case door to "crowd out sight-blocking candy racks." This is identical to the concept of my rack.

Display asserts that the '176 Patent covers any Flum "multiple stop function" using "recesses in the bottom of the 'Globe Glide.'" In fact, Display's recess claims neither cover the ability of a rack to be alternatively positioned in a cooler, nor all racks having such an ability. All that is covered by the '176 Patent is that which is claimed in it and the reasonable equivalents thereof. In comparing the Flum GLOBE GLIDE with the recess claims it appears that the Flum I-beam (1) does not perform the same function as the claimed recesses because the I-beam does not create a "snug" fit with a shelf upper rod; and (2) does not work the same way as the claimed recesses because the I-beam does not telescopically receive a shelf upper rod to create such a "snug" fit. While, the Flum I-beam does enable the rack to be alternatively positioned in a cooler, as this Court has stated, "equivalence is not established by showing only accomplishment of the same result." *DePaul v. General Instrument Corp.*, 771 F.Supp. 642, 645 (S.D.N.Y.1991).[15] Accordingly, summary judgment for noninfringement of Claims 21–26 is warranted.[16]

### Attorney Fees

Display asserts that Flum's motions are "frivolous," and consequently that it should be awarded attorney's fees. In light of the above findings, Display's request is denied.

### Conclusion

For the reasons stated above, Flum's motion for summary judgment with respect to invalidity of Claim 1 is granted. Flum's motion for summary judgement with respect to noninfringement is granted in part and denied in part.

---

**15.** Display cites this Court's denial of summary judgment in *DePaul v. General Instrument Corp.*, 771 F.Supp. 642, and contends that the "issues on this motion are so similar to the issues of an earlier motion decided by the Court, that it compels a similar result." *DePaul*, however, is distinguishable from the instant case.

Settle judgment on notice.

It is so ordered.

**16.** Flum's remaining arguments for noninfringement if Claims 5–6, 12–13, 18–20 and 27–28 are moot in view of the fact that none of these claims are now being asserted against Flum. Accordingly, they will not be considered here.