**MINERALS TECHNOLOGIES INC. and Specialty Minerals Inc. Plaintiffs,**

v.

**OMYA AG, Omya Industries Inc., and Omya, Inc. Defendants.**

**No. 04 Civ. 4484(VM).**

United States District Court, S.D. New York.

Oct. 7, 2004.

Anthony J. Costantini, Laura Danielle, Patricia Bayer Cunningham, Duane Morris LLP, New York, NY, for Minerals Technologies Inc., Specialty Minerals Inc.

Jeffrey T. Golenbock, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, for Omya AG, Omya Industries Inc., Omya, Inc.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Minerals Technologies Inc. ("MTI") and Specialty Minerals Inc. ("SMI") (collectively, "Plaintiffs") have moved the Court for a preliminary injunction pursuant to Fed.R.Civ.P. 65 enjoining Defendants Omya AG, Omya Industries, Inc., and Omya, Inc. (collectively, "Omya")

from infringing or inducing infringement of Claim 1 of United States Patent No. 5,043,017, attached as Exhibit 1 to Declaration of Anthony J. Constantini dated August 27, 2004 (the "'017 Patent").[1] For the reasons described below, Plaintiffs' motion is denied.

## I. FACTUAL BACKGROUND

The '017 Patent relates to a formulation of calcium carbonate that does not affect the acidity of paper when it is mixed with pulp during the papermaking process.[2] Normally, calcium carbonate, an alkaline substance, decreases the acidity of pulp when mixed with it. This change in acidity can be harmful for certain types of neutral or weakly acidic paper.

The '017 Patent was issued in 1991 to Dr. June Passaretti for a formulation of calcium carbonate that is acid-stabilized, such that it does not affect the acidity of pulp when introduced to the papermaking process. Claim 1 of the patent asserts protection for:

An acid-stabilized finely divided calcium carbonate comprising a mixture of at least about 0.1 weight percent of a compound selected from the group consisting of a calcium-chelating agent and a conjugate base, together with at least about 0.1 weight percent of weak acid, with the balance to give 100 weight percent being finely divided calcium carbonate, such that the calcium carbonate is coated by and is in equilibrum [sic] with the calcium-chelating agent or conjugate base and the weak acid.

'017 Patent, col. 7 l. 65–col. 8 l. 6. SMI, a subsidiary of MTI that is the successor in interest regarding the '017 Patent, has sought to commercialize the invention by creating and marketing an acid-stabilized form of calcium carbonate to the papermaking industry. SMI alleges that it has invested over $24 million in commercializing the invention, and that the potential market for the product is projected to be over $150 million per year.

SMI seeks injunctive relief against Omya, its primary competitor in the relevant market, on the grounds that Omya is inducing papermakers to infringe the '017 Patent and compromising the value of its invention by conducting papermaking tests in which calcium carbonate, a chelating agent, and a weak acid (collectively, the "three elements") are used to reduce the alkalinity of the resulting paper product, and by evidencing its intentions to expand its business in this field. SMI cites specifically to papermaking tests conducted at a mill owned by a firm named Stora Enso during December 2003 and August of this year as instances in which Omya induced infringement of SMI's patents by providing supplies and instructions for papermaking that used the three elements to make paper.

Omya admits that it has conducted the Stora Enso tests, but claims that for several reasons, neither the tests, nor its contemplated activities in the marketplace for calcium carbonate products, infringe or induce infringement upon the '017 Patent. First, Omya asserts that the '017 Patent, properly construed, covers only calcium

---

1. In the underlying suit, Plaintiffs have also accused Omya of infringing another patent that it owns, U.S. Patent No. 5,156,719 (the "'719 Patent"). Plaintiffs have moved for a preliminary injunction only on the '017 Patent, and have offered arguments for injunctive relief based only on Claim 1 of the '017 Patent.

2. According to the parties' briefs, calcium carbonate has a number of important uses in the paper industry: among other things, it brightens paper and, as a less expensive material than wood pulp, also reduces paper's cost when mixed with pulp.

carbonate that is itself acid-stabilized through the process described in the patent; it does not, according to Omya, cover *all* papermaking processes in which the three elements are used together to reduce the alkalinity of the resulting calcium carbonate-containing paper product. Second, Omya claims that the Stora Enso tests did not infringe because the calcium carbonate used in the tests was not acid-stabilized, and the resulting paper product was alkaline rather than neutral or acidic, as the product would be if SMI's patented technology had been used. Third, Omya claims that SMI's patent, if construed as broadly as SMI claims it reaches, is invalid as anticipated by prior art.

## II. *STANDARD OF REVIEW*

■ Pursuant to 35 U.S.C. § 283,[3] district courts may grant injunctive relief to a patentholder in order to "prevent the violation of any right secured by patent." *Id.* The decision whether or not to grant a preliminary injunction to preserve the status quo pending final resolution of an infringement suit is "within the sound discretion of the district court." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001) (citing *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir.1996)).

■ In order to show its entitlement to a preliminary injunction, SMI must prove: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com,* 239 F.3d at 1350. None of the factors are independently dispositive, but a party must establish both of the first two factors, at minimum, in order to prevail. *See id.*

■ In order to demonstrate a likelihood of success on the merits, SMI must show that, in light of the burdens that will inhere at trial on the merits of SMI's claim of induced infringement (1) SMI will likely prove that Omya induced infringement of the '017 Patent, and (2) that SMI's infringement claim "will likely withstand [Omya's] challenges to the validity and enforceability" of the '017 Patent. *See id.* at 1350–51 (discussing the standard of proof for demonstrating likelihood of success on the merits in a direct infringement suit); 35 U.S.C. § 271(b) (2000) (stating that "whoever actively induces infringement of a patent shall be liable as an infringer").

## III. *DISCUSSION*

Because SMI has not shown that it will likely prove that Omya induced infringement of the '017 Patent, it has not met the predicate condition of a preliminary injunction based on alleged induced infringement: demonstrating that a predicate act of infringement has taken or is taking place. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed.Cir. 1990) (concluding that a plaintiff alleging induced infringement must demonstrate that "the alleged infringer's actions induced *infringing acts*") (emphasis added).

SMI seeks to characterize the scope of the '017 Patent in very broad terms. According to SMI's asserted construction of the patent, any use of calcium carbonate along with chelating agents and a weak acid in neutral or acidic papermaking processes would fall within the scope of the patent. (*See* Plaintiffs' Memorandum of

---

**3.** 35 U.S.C. § 283 states in full: "The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

Law in Support of SMI's Motion for Preliminary Injunction (hereinafter, "Pfs.' Mem. of Law") at 12 (alleging that the Stora Enso trial infringed the '017 Patent because the test involved the three elements listed in the patent); Transcript of Hearing on Plaintiffs' Motion for Preliminary Injunction on September 21, 2004 (hereinafter, "Hr'g Tr.") at 10–12.)

■■■ At this stage of the proceedings, application of standard rules of patent construction raises substantial doubts that the breadth of the '017 Patent is nearly as expansive as SMI asserts. In construing a patent, the Court must look first to the language of the claim itself, with the presumption that the words contained in the patent have their "ordinary and customary meaning." *Display Techs., Inc. v. Paul Flum Ideas, Inc.*, 75 F.Supp.2d 283, 290 (S.D.N.Y.1999), *aff'd*, 60 Fed.Appx. 787 (Fed Cir.2003). Patents must also be construed in light of each claim limitation contained in the patent, as the limitations are critical to an assessment of the scope of the patent. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir.1995), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995).

■■ Read in light of these interpretive guides, the plain language of Claim 1 of the '017 Patent contains a critical limitation that raises serious doubts regarding its asserted scope. As Omya points out in its brief, the last clause of Claim 1 clearly states that the mere presence of the three elements in the same papermaking process does not, by itself, fall within the scope of the process. Rather, according to the clause, Claim 1 of the '017 Patent covers "[a]n acid-stabilized finely divided calcium carbonate" which is produced *such that the calcium carbonate is coated by and is in equilibrum* [sic] *with the calcium-chelating agent or conjugate base and the weak acid.*" '017 Patent, col. 7 l. 65–col. 8 l. 6 (emphasis added). Thus, a plain reading of the patent strongly suggests that Claim 1 only covers a *particular form* of acid-stabilized finely divided calcium carbonate, one in which the carbonate is: 1) coated by, and 2) in equilibrium with, the other two types of chemicals cited in the claim.

SMI's submissions to and arguments before the Court fail to rebut this interpretation. SMI submits that Claim 1 "would have well recognized meaning to one of ordinary skill in the art and would require *no construction* by the Court" (Pfs.' Mem. of Law at 16 (emphasis added)), but this conclusory statement does not substitute for actual analysis of the plain language of the claim, particularly where Omya has introduced a plausible proposed interpretation that directly conflicts with the one proposed by SMI. SMI's Memorandum of Law also asserts that the "the '017 Patent also teaches, *and development has shown*, that the point and order of addition of the three key components into the papermaking system is not critical to the effectiveness of the acid-tolerant papermaking technology" (Pfs.' Mem. of Law at 9 (emphasis added)), but the claims determine the scope of the patent, not what subsequent development shows *could have* possibly been covered by the patented technology.[4]

---

4. Furthermore, Omya asserts that its use of the three elements together, when the calcium carbonate had not already been acid-stabilized before its introduction into the papermaking process, did *not* achieve the same results as would have been achieved had SMI's patented technology been used. According to Omya, the papermaking process used during the Stora Enso test resulted in alkaline paper, not neutral or weakly acidic paper, as the patent claims would be produced by use of acid-stabilized calcium carbonate. (*See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary

SMI's efforts to buttress its proposed interpretation of Claim 1 at oral argument on September 21, 2004, were similarly unavailing. SMI focused its argument on an effort to prove that the that the patent covers neutral, as well as acidic, papermaking (*See* Hr'g Tr. at 10–17), but these arguments fail to counter Omya's assertion that Claim 1 covers, not a papermaking process to be used in environments of certain acidities, but a type of calcium carbonate *product* that is most *useful* in neutral or weakly acidic environments. The "Field of Invention" section of the patent strongly supports Omya's proposed interpretation. It describes the invention as relating to three separate subjects: 1) "an acid-stabilized form of calcium carbonate," 2) "a process for producing *this material,*" and 3) "a method for use of *the material* as a filler material *in the making of neutral to weakly acidic paper* ...." '017 Patent, col 1, ll. 8–13 (emphasis added). The "material" referenced in the second and third subjects of the patent clearly refers to the "acid-stabilized form of calcium carbonate" that constitutes the first subject of the patent; Claim 1, by its terms, refers to that "material," not to the process used to produce it or to the methods by which the "material" could be used in the making of neutral to weakly acidic paper.

■ A further reason counseling in favor of reading the '017 Patent to include only acid-stabilized forms of calcium carbonate is the real possibility that the patent would be invalid as anticipated by prior art if read broadly to include any papermaking process that included the three elements. Under federal law, "[a] patent shall be presumed valid." 35 U.S.C. § 282 (2000). Furthermore, a patent cannot be read broadly by a court to find infringement but narrowly to avoid invalidity. *See Amazon.com,* 239 F.3d at 1352. Thus, a patent should be read narrowly in order to preserve its validity if a broader reading would render its validity questionable as anticipated by prior art.

Here, Omya has found references to papermaking processes that incorporate the three elements in several patents, including U.S. Patent No. 4,714,603 ("the '603 Patent"), which predates the '017 Patent by nearly four years.[5] The '603 Patent explicitly discusses the use of calcium carbonate, a weak acid, and a chelating agent in papermaking processes. *See* '603 Patent (describing a process for making a spherical calcium carbonate precipitate that involved addition of a chelating agent and a weak acid to a calcium-containing chemical solution). Thus, if the '017 Patent were read to cover all papermaking processes that included the three elements, it would likely be invalid as anticipated by the '603 Patent.

Finally, the presence of a factual dispute concerning the occurrences at the Stora Enso trials renders it impossible for the Court to grant preliminary relief without further discovery. SMI alleges that the Stora Enso tests infringed the '017 Patent, but was not present at the tests. Omya, which was present at, and which organized the tests, claims that nothing occurred that could have conceivably infringed the patent. While it may be possible for SMI to show that the Stora Enso tests did ultimately use an acid-stabilized form of calcium carbonate covered by the patent, it cannot meet its burden of proving a suffi-

Judgment (hereinafter, "Defs.' Mem. of Law") at 10 (describing the results of the Stora Enso test).)

5. The '603 Patent was issued on December 22, 1987, while the '017 Patent was issued on August 27, 1991.

cient likelihood of success on the merits based on the record before the Court.

## IV. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that the motion of Plaintiffs Minerals Technologies Inc. and Specialty Minerals Inc. for a preliminary injunction is denied; and it is further

**ORDERED** that the parties confer and submit by October 15, 2004, for the Court's approval a proposed case management plan to govern the schedule of pretrial proceedings in this case.

**SO ORDERED.**